**Mary E. DELIDUKA, Respondent,**

v.

**George E. DELIDUKA, Appellant.**

No. CO–83–1261.

Court of Appeals of Minnesota.

April 4, 1984.

Medard B. Kaisershot, Crystal, for appellant.

Marilyn J. Michales, Minneapolis, for respondent.

Heard, considered and decided by FOLEY, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

This is an appeal from a dissolution judgment and from an order denying a new trial. The husband contends that the trial court erred by awarding his wife 50 percent of his gross military retirement benefits and by failing to make certain tax calculations in determining income available for child support and maintenance.

The wife contends that the court abused its discretion by granting her temporary rather than permanent maintenance and by not requiring her husband to pay her attorney fees.

Affirmed as modified.

## FACTS

Mary and George Deliduka were divorced in June 1983 after 23 years of marriage. The Delidukas, ages 48 and 45 respectively, had seven children. The children, ages 21, 20, 18, 17, 15, 13, and 9, all live with Mrs. Deliduka. The court granted Mrs. Deliduka custody of all four minor children.

Mr. Deliduka was an officer in the U.S. Air Force during the Delidukas' marriage. He retired in 1980 after 20 years of service. He has a vested interest in a military retirement pension plan. According to a retirement pay statement submitted at trial, he receives $1566.46 gross/$1380.04 net per month from the pension.

Mr. Deliduka now works as a training coordinator for Trane Sentinel, Inc. Pay stubs submitted at trial show that he receives $957.85 gross/$731.73 net bi-weekly from Trane.

Mrs. Deliduka was a full time homemaker from 1960 until 1981. In 1981 to help the family meet expenses she took a job as an adult newspaper carrier. Her net salary from the route is approximately $714 per month.

The Delidukas' debts at the dissolution totalled $16,701.66. Their only significant assets were their home and Mr. Deliduka's military pension.

The parties dispute the trial court's treatment of military retirement benefits as a marital asset, its award of spousal maintenance of $100 per month for three years, and child support of $900 per month for the four minor children, with reductions as each child reaches majority, and attorneys fees.

## ISSUES

1. Are military retirement benefits marital property subject to division between spouses in a dissolution proceeding in Minnesota?

2. Does the trial court's award to the wife of 50 percent of her husband's military retirement benefits violate the Uniformed Services Former Spouses' Protection Act?

3. Did the trial court abuse its discretion by:

   a. failing to take into account tax considerations not raised at trial in calculating Mr. Deliduka's income?

   b. failing to award permanent maintenance to a long term homemaker with four minor children?

   c. ordering the parties to pay their respective attorney fees?

## ANALYSIS

■ 1. Mr. Deliduka contends that the trial court erred in treating his military pension benefits as martial property. Minn.Stat. § 518.54, subd. 5, defines marital property as:

property, real or personal, *including vested pension benefits or rights*, acquired by the parties, or either of them, to a dissolution ˅ * * at any time during

the existence of the marriage relation between them. (emphasis added)

Therefore, Mr. Deliduka's military pension qualifies as marital property.

■ 2. Appellant also challenges the award of 50 percent of his gross military pension benefits to his wife as a violation of 10 U.S.C. § 1408, the Uniformed Services Former Spouses' Protection Act. He argues that the Act limits the maximum portion of military pension benefits a court may award to a former spouse to 50 percent of "disposable retired pay." Disposable retired pay is gross retired pay less deductions authorized by 10 U.S.C. § 1408(a)(4).[1]

The act is new and the United States Supreme Court has not definitively interpreted its provisions. A fair reading shows that the act grants states the authority to treat *all* disposable retired pay as marital property,[2] but limits *direct government payments* to former spouses to 50 percent of disposable retired pay (65 percent for multiple court orders).[3] That means that a state court wishing to award a former spouse more than 50 percent of disposable retired pay must order direct government payments *and* payments by the member of the military to the spouse.[4]

In this case the trial court intended to award Mrs. Deliduka one half of her hus-

1. 10 U.S.C. § 1408(a)(4) defines disposable retired or retainer pay as:

   [T]he total monthly retired or retainer pay to which a member is entitled (other than the retired pay of a member retired for disability under chapter 61 of this title) less amounts which * * *
   (C) are properly withheld for Federal, State, or local income tax purposes, if the withholding of such amounts is authorized or required by law and to the extent such amounts withheld are not greater than would be authorized if such member claimed all dependents to which he was entitled;

2. 10 U.S.C. § 1408(c) grants state courts authority to treat military pensions as military property. It provides:

   Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

3. 10 U.S.C. § 1408(d) permits direct government payments to former spouses, subject to certain limitations. It provides:

   (d)(1) After effective service on the Secretary concerned of a court order with respect to the payment of a portion of the retired or retainer pay of a member to the spouse or a former spouse of the member, the Secretary shall, subject to the limitations of this section, make payments to the spouse or former spouse in the amount of the disposable retired or retainer pay of the member specifically provided for in the court order.
   *     *     *     *     *     *
   (d)(5) If a court order described in paragraph (1) provides for a division of property (including a division of community property) in addition to an amount of disposable retired or retainer pay, the Secretary concerned shall,

subject to the limitations of this section, pay to the spouse or former spouse of the member, from the disposable retired or retainer pay of the member, any part of the amount payable to the spouse or former spouse under the division of property upon effective service of a final court order of garnishment of such amount from such retired or retainer pay.
   10 U.S.C. § 1408(e) specifies the percentage limitations. § 1408(e)(1) provides:
   The total amount of the disposable retired or retainer pay of a member payable under subsection (d) may not exceed 50 percent of such disposable retired or retainer pay.
   And § 1408(e)(4)(B) provides:
   Notwithstanding any other provision of law, the total amount of the disposable retired or retainer pay of a member payable by the Secretary concerned under all court orders pursuant to this section and all legal processes pursuant to section 459 of the Social Security Act (42 U.S.C. 659) with respect to a member may not exceed 65 percent of the disposable retired or retainer pay payable to such member.

4. § 1408(e)(6) provides:
   Nothing in this section shall be construed to relieve a member of liability for the payment of alimony, child support, or other payments required by a court order on the grounds that payments made out of disposable retired or retainer pay under this section have been made in the maximum amount permitted under paragraph (1) or subparagraph (B) of paragraph (4). Any such unsatisfied obligation of a member may be enforced by any means available under law other than the means provided under this section in any case in which the maximum amount permitted under paragraph (1) has been paid and under section 459 of the Social Security Act (42 U.S.C. 659) in any case in which the maximum amount permitted under subparagraph (B) of paragraph (4) has been paid.

band's gross military pension as a division of marital property. Since the parties had inadequate resources to permit a lump sum settlement, the court provided for installment payments to Mrs. Deliduka.

The trial court tried to give Mrs. Deliduka her half of the gross pension by ordering direct government payments to her under 10 U.S.C. § 1408. But, since § 1408 limits direct payments to former spouses to 50 percent of *disposable* retired pay, direct payments alone would not result in Mrs. Deliduka receiving 50 percent of the *gross* pension.

The trial court erred only in its method of disbursing pension payments to the wife. To guarantee its intended division of marital property, the court, in addition to ordering direct government payments, should have ordered Mr. Deliduka to make monthly supplemental payments. Mrs. Deliduka would then receive her ful one-half of the gross pension—50 percent of the disposable pension would be paid by the federal government, and the difference between 50 percent of gross pension and 50 percent of disposable pension would be made by payments from Mr. Deliduka.

■ 3. Mr. Deliduka contends that his income available for maintenance and child support was overestimated because the court presumed that the parties would each pay income tax on their respective halves of the pension. He correctly notes that the trial court's income calculations were expressly premised upon the Deliduka's each paying income taxes on their respective halves of the military pension. But his argument that he must pay income tax on the entire pension, while his wife escapes all tax liability, is without merit.

Tax regulations technically require him to pay withholding on the entire amount and prohibit withholding from direct pension payments to his wife. However, he will ultimately be liable for income tax only on his half of the pension. The trial court properly recognized the nature of the pension asset, i.e., that it was marital property, but structured its payout as periodic payments for tax purposes. By labeling its disposition of the pension benefits a division of marital property, but structuring installment payments over more than 10 years, the trial court anticipated IRS treatment as periodic payments taxable to Mrs. Deliduka under 26 U.S.C. § 71 and deductible by Mr. Deliduka under 26 U.S.C. § 215.

Mr. Deliduka has confused tax withholding with ultimate tax liability and ignores the fact that withholding may be adjusted. A taxpayer has both the ability and the right, under the withholding tax regulations, to increase his maximum allowable exemptions to reflect his actual tax obligation. Mr. Deliduka cites no authority for his argument that he is only entitled to claim himself and the four minor children as exemptions.

The trial judge recognized that uncertainties about the application of federal tax laws and the Uniform Services Former Spouses' Protection Act could upset his calculations. So his decree specifically invites Mr. Deliduka to come back to court for adjustments of support and maintenance should he have to pay income tax on more than his one-half share of the pension. If, after consulting a tax attorney or accountant, the planned division of tax liabilities proves impossible, Mr. Deliduka can return the matter to the trial court for modification of maintenance and child support. If he does, it will be his obligation to prove that the tax treatment carefully considered by the trial court to give this family the maximum monetary benefit from the pension division will not work.

■ 3a. Mr. Deliduka's claim that the trial court miscalculated his income tax rate is also unsubstantiated. Other than pay statements reflecting withholding for taxes, he made no effort to provide facts to the trial court concerning his income tax liabilities. In a motion for amended findings he alleged that the withholding amounts on the pay stubs did not accurately reflect his tax liabilities and offered new figures totally unsupported by the trial record. On appeal he made spurious arguments on the effect of the tax regulations.

■ We will not disturb the trial court's maintenance or child support awards on the basis of unsubstantiated claims and self serving figures as to a party's income tax liabilities. The trial court's net income computations are supported by the evidence presented at trial and are not clearly erroneous. Therefore, they must stand.

3b. Mrs. Deliduka argues that the court's award of only $100 per month temporary maintenance for three years, and its failure to grant permanent maintenance constitutes abuse of discretion under Minn. Stat. § 518.552.

■ The length of the marriage, Mrs. Deliduka's age, her family responsibilities, her lack of job skills, and her lack of resources to obtain further training or education all support her plea for permanent maintenance.

■ But the question upon appeal is not whether permanent maintenance would be appropriate, but whether the trial court abused its discretion by not awarding it. The court's minimal maintenance award for a limited period was not an abuse of discretion considering Mrs. Deliduka's present earnings and the security she is afforded by the long-term payout of the pension asset.

■ 3c. Mrs. Deliduka also contends that the trial court abused its discretion by not requiring her husband to pay her attorney fees. The court's order that the parties pay their own attorney fees was within its discretionary power. Allowance of attorney fees in dissolution cases rests almost entirely in the discretion of the trial court. *Solon v. Solon*, 255 N.W.2d 395 (Minn.1977). An award should not be disturbed absent clear abuse of discretion. *Davis v. Davis*, 306 Minn. 536, 235 N.W.2d 836 (1975).

### DECISION

The decision of the trial court is affirmed and remanded to the trial court with instructions to make the following modifications:

Mr. Deliduka is hereby ordered to:

1. serve notice on the appropriate government agency consistent with the Uniformed Services Former Spouses Protection Act 10 U.S.C. § 1408 (1982) to provide for direct monthly payments to Mrs. Deliduka of 50 percent of his disposable retired pay.

2. adjust income tax withholding on the military pension by taking the maximum allowable exemptions resulting in withholding reflecting his tax obligation on 50 percent of the gross pension.

3. make monthly payments to Mrs. Deliduka of a sum totaling 50 percent of his gross military retirement pay less 50 percent of disposable retired pay.

■ In addition, Mr. Deliduka is hereby ordered to pay Mrs. Deliduka $400 for attorney fees on appeal.