In re the Marriage of R. Carl
WOLTER, petitioner,
Respondent,

v.

Kari K. WOLTER, Appellant.

No. C6–85–1480.

Court of Appeals of Minnesota.

March 4, 1986.

Joanne Thatcher Swanson, Swanson Law Office, St. Paul, for respondent.

Judith L. Oakes, Susan E. Flint, Oakes & Kanatz, St. Paul, for appellant.

Heard, considered and decided by FORS-BERG, P.J., and LANSING and RANDALL, JJ.

## OPINION

LANSING, Judge.

Kari Wolter appeals from a dissolution judgment and decree, contending the trial court abused its discretion in giving Carl Wolter custody of their two children, setting her child support obligation, dividing her non-vested pension rights, and awarding him $750 in attorney's fees. We affirm the trial court's decision on custody and attorney's fees and remand on the child support and pension issues for further findings.

## FACTS

Carl Wolter and Kari Wolter were married in December 1971. At the time they were living in Oconomowoc, Wisconsin, where both were teachers. In 1974 Kari Wolter began attending the University of Wisconsin in Milwaukee, where she obtained her master's degree and did coursework toward her PhD in mathematics. In 1976 the Wolters moved to St. Paul when Kari Wolter obtained a job as a systems design engineer with Sperry Univac. Carl Wolter worked briefly at a woodworking shop until their first child, Eli, was born in 1978.

After Eli's birth, Kari Wolter returned to work and Carl Wolter stayed at home to care for him. They had a daughter, Keely, in 1980. The Wolters kept the same arrangement after Keely's birth.

In February 1983 the parties separated. Carl Wolter remained in the home with the children, and Kari Wolter moved to a nearby apartment. They agreed to share custody of the children on alternating weeks. Kari Wolter continued to support her husband and the children until May 1983, when Carl Wolter obtained a job as manager of a woodworker's supply company. They then arranged for a babysitter convenient to both homes.

In August 1983 a temporary order gave custody to Carl Wolter pending a hearing. In September 1983 the court ordered custody mediation and investigation. The parties continued to share custody on alternate

weeks. The final mediation agreement set out a complex system for alternating weeks and holidays. In December 1983 another temporary order gave the Wolters joint legal and physical custody and required Kari Wolter to pay $350 per month in child support.

In August 1984 Carl Wolter requested a custody investigation because he was dissatisfied with the joint custody arrangement. In the course of the investigation both the parents and the children received psychological evaluations. The custody investigator recommended joint legal and physical custody, alternating every six months rather than every week. Both parties apparently disagreed with this recommendation; Kari Wolter wanted to continue alternating on a weekly basis, and Carl Wolter wanted to obtain sole legal and physical custody.

The trial took place in June 1985. The resulting decree granted sole legal and physical custody to Carl Wolter. Kari Wolter received liberal visitation rights: The children are to stay with her during the summers and on alternate holidays and weekends during the school year. She was ordered to pay $600 in child support for the months September through May, and $350 in child support for June through August. Carl Wolter was awarded the homestead subject to Kari Wolter's lien for half the equity. In addition, the decree divided her pension plan so that Carl Wolter would receive a fixed percentage when the benefits were paid on her retirement. Carl Wolter received $750 in attorney's fees.

## ISSUES

1. Did the trial court abuse its discretion in awarding sole custody to the father?

2. Did the trial court abuse its discretion in setting the mother's child support obligation?

3. Did the trial court abuse its discretion in dividing the mother's nonvested pension benefits?

4. Did the trial court abuse its discretion in awarding the father attorney's fees?

## ANALYSIS

### I

Kari Wolter first contends the trial court should have conferred joint legal and physical custody rather than giving sole custody to the father.

Minn.Stat. § 518.17, subd. 1 (1984), sets out the factors for making a custody decision based on the child's best interests. When joint custody is sought, the court is also to consider:

(a) The ability of the parents to cooperate in the rearing of their children;

(b) Methods for resolving disputes regarding any major decision concerning the life of the child, and the parent's willingness to use those methods; and

(c) Whether it would be detrimental to the child if one parent were to have sole authority over the child's upbringing.

*Id.*, subd. 2. The mother asserts that the trial court abused its discretion in refusing to award joint custody because they successfully shared custody during the 26 months before trial and because several witnesses testified that joint custody was feasible.

Although the parties initially cooperated and attempted to arrange a workable shared custody arrangement, the record shows that their relationship became more acrimonious in the months before trial. Both parents testified that their ability to communicate had deteriorated. The father said it is difficult to talk to the mother about the children; the mother admitted that she is reluctant to talk to him on the telephone and prefers communicating by letter. At one point, she gave Eli a notebook to carry notes back and forth between her and the father. The father used the notebook system for a while but eventually stopped. Kari Wolter admitted that she refuses to discuss the children with Carl Wolter when the children are present and that she limits the time the children can talk to their father on the telephone when they are at her home. They have had major arguments over which of them

should keep the children's photographs and drawings. They also have major conflicts in religious attitudes that have caused confusion for the children.

The expert witnesses who testified expressed reservations about the Wolters' ability to communicate. Carol Geraghty, the custody investigator who recommended joint custody with physical custody alternating every six months, said the Wolters were trying to work out methods of communication, but acknowledged that their ability to communicate had declined since September 1983. Psychologist Stephen Huey said:

> [A]s individual parents, I would not have hesitation about either of them [having custody]. Their relationship with each other and also as expressed through the children I think is somewhat stressful to the children in a number of ways.
>
> *      *      *      *      *      *
>
> [If the children were] in the custody of one parent most of the time that parent might feel less likely to downgrade the other parent * * *.

When asked what should happen if joint custody were not granted, Huey said, "with reluctance since both parents look very qualified," that he thought the children had a stronger sense of allegiance to their mother. Andrea Bie, an educational psychologist who evaluated Eli, said the weekly change in custody should not continue because it promoted conflict between the parents. She said alternating custody every six months, as suggested by Carol Geraghty, might disrupt the school year and cause problems as the children got older. She suggested that the end of the school year was a more natural time for a change in physical custody.

■  This court has generally recognized that one parent's opposition to joint custody undermines the cooperation necessary for joint custodial decisions. *See, e.g., Heard v. Heard,* 353 N.W.2d 157 (Minn.Ct. App.1984); *Chapman v. Chapman,* 352 N.W.2d 437 (Minn.Ct.App.1984). *But see Berthiaume v. Berthiaume,* 368 N.W.2d 328 (Minn.Ct.App.1985) (joint custody upheld when the parties, although uncooperative during the dissolution proceeding, were able to communicate and cooperate in reaching major decisions about their children). The Wolters clearly have problems communicating. The trial court did not abuse its discretion in refusing to give them joint custody of the children.

In the alternative, Kari Wolter contends that she should have received sole custody of the children.

She first argues that the presumption in favor of the primary parent enunciated in *Pikula v. Pikula,* 374 N.W.2d 705, 713 (Minn.1985), does not apply because she and Carl Wolter equally shared parenting responsibilities. *See id.* at 714 (no preference arises when the responsibilities of child care are shared by both parents). Carl Wolter argues that he was the primary parent.

The trial court adopted the father's proposed findings, which provide only that:

> [t]he best interests of the children, under all of the factors enunciated in Minnesota Statutes 518.17 and 518.175, require that the joint custodial relationship heretofore existing under temporary orders be terminated. The sole custody of the children, both legal and physical, shall be in the [father], subject to * * * liberal visitation in the [mother].

The trial court is required to make written findings in a custody dispute which "properly reflect its consideration of the [relevant statutory] factors." *Rosenfeld v. Rosenfeld,* 311 Minn. 76, 82, 249 N.W.2d 168, 171 (1976). The trial court's automatic adoption of Carl Wolter's minimal proposed findings does not demonstrate the thoughtful consideration of a custody issue that findings are intended to ensure.

■  We conclude under the unique circumstances of this case, however, that further findings on custody are unnecessary. The record is fully developed and it shows without doubt that the Wolters are both devoted parents who are committed to maintaining a strong and loving relationship with their children. The record would

support a determination that they shared parenting duties equally, but it would also support a determination that the father was the primary parent. If we assume that the primary parent preference does not apply, as the mother urges us to, we still could not say that giving custody to the father is an abuse of discretion. We are convinced from the record that the custody decision is soundly based.

## II

Kari Wolter also contends that the trial court abused its discretion in setting her child support obligation. She argues that the trial court improperly deviated upward from the guidelines without giving reasons. The trial court ordered her to pay $600 per month during the school year and $350 per month during the summers. Because she has physical custody during the summers, she argues that the trial court deviated *upward* from the guidelines by failing to require Carl Wolter to pay support during those months. At the same time, Carl Wolter argues that the trial court deviated *downward* from the guidelines because the payment should be $653 per month (30 percent of her net monthly income) all year long.

When parents share custody or when the noncustodial parent has physical custody for a substantial period of time, as in this case, trial courts have the discretion to structure child support in a way that fairly reflects needs and financial circumstances. *See, e.g., Hortis v. Hortis,* 367 N.W.2d 633 (Minn.Ct.App.1985); *id.,* 378 N.W.2d 837 (Minn.Ct.App.1985); *Esposito v. Esposito,* 371 N.W.2d 608 (Minn.Ct.App. 1985). Findings are necessary, however, to evaluate the trial court's exercise of discretion. Because of the minimal findings in this case, we are unable to tell why the trial court structured the mother's child support obligation as it did.

## III

Kari Wolter next contends that the trial court abused its discretion in dividing her nonvested pension benefits. The de-cree provides that when she begins receiving the retirement benefits, the payor is to directly send Carl Wolter a portion equal to "one half of that fraction of each payment where the numerator is nine and the denominator is total years of credited service, nine representing the number of years of marriage during which pension benefits accrued." Kari Wolter argues that the trial court should have valued the pension and divided its present cash value.

Nonvested pensions are marital property. *Janssen v. Janssen,* 331 N.W.2d 752, 754 (Minn.1983). In *Taylor v. Taylor,* 329 N.W.2d 795 (Minn.1983), the supreme court said regarding the division of pension benefits:

The valuation and division of pension rights is generally a matter for the trial court's discretion. * * * In deciding whether retirement benefits should be divided at the time of dissolution or upon future receipt by the employee spouse, the trial court should consider the advantages and disadvantages of each method in light of the facts of the particular case before it.

Division of retirement benefits at the time of divorce has the obvious advantage of avoiding the continuing jurisdiction of the court in order to ensure that the appropriate payments are made * *. This method is preferred where there are sufficient assets available at the time of divorce to divide the present value of the retirement benefits without causing an undue hardship to either spouse and where testimony on valuation is not unduly speculative.

A second method requires the determination of a fixed percentage for the non-employee spouse of any future payments the employee receives under the plan, payable when paid to the employee. This method * * * has the advantage of making it unnecessary to determine the present value of the pension fund. The fixed percentage method should be used where present value determinations are unacceptably speculative or there are not enough assets to equitably require that

benefits due in the future be split presently.

*Id.* at 798–99. *See also Hortis v. Hortis,* 367 N.W.2d at 636. ("The preferred method for non-vested pensions is * * * the 'present cash value method' as long as the *Taylor* requirements are met").

There is no evidence of the present value of Kari Wolter's pension other than her assertion in a pretrial statement that the present value is "$1,353 assuming an 8% discount rate." Nor does the record reflect that the trial court considered the advantages and disadvantages of the different methods of valuing and dividing it. Because there is no record evidence, we have no way of reviewing the trial court's exercise of discretion.

## IV

Finally, Kari Wolter argues that the trial court abused its discretion in awarding Carl Wolter $750 in attorney's fees. The allowance of attorney's fees in a dissolution proceeding is almost entirely within the discretion of the trial court. *Kirby v. Kirby,* 348 N.W.2d 392, 394 (Minn.Ct.App. 1984). The trial court did not abuse its discretion.

## DECISION

The trial court did not abuse its discretion in giving sole custody of the Wolter children to their father or in awarding him $750 in attorney's fees.

We remand for further findings on the mother's child support obligation and on the method for dividing her pension.

Affirmed and remanded.