**In re the Marriage of Rosalie N. PAVLASEK, Petitioner, Respondent,**

**v.**

**Richard A. PAVLASEK, Appellant.**

**No. C5–87–549.**

Court of Appeals of Minnesota.

Nov. 10, 1987.

Becky Skinner Toevs, Larson & Lambert, Wayzata, for appellant.

Heard, considered and decided by FOLEY, P.J., and WOZNIAK and CRIPPEN, JJ.

## OPINION

FOLEY, Judge.

Richard A. Pavlasek appeals from the judgment and decree that dissolved his 19–year marriage to respondent Rosalie N. Pavlasek, which provided, among other things, that Richard pay $600 per month to Rosalie for support of the parties' youngest child, that Richard pay $300 per month to Rosalie as rehabilitative spousal maintenance for a period of three years, and that Richard pay $5,815 to Rosalie for her attorney fees and costs. Richard also appeals from the denial of his motion for amended findings of fact and conclusions of law or for a new trial. We affirm.

## FACTS

Rosalie and Richard Pavlasek were married on December 27, 1967. Three children were born of this marriage. Heather, born March 14, 1969, has graduated from high school. Heidi, born July 8, 1972, is severly retarded and lives at DeMar Children's Home. William, born January 26, 1981, is the only minor child living with the parties.

Rosalie is employed as a teacher. Her salary for the 1985–1986 school year was $19,900. In addition, she receives income from various part-time jobs, which, in 1986, was approximately $2,549.

Richard is employed as a business systems manager. His gross income per month from that job is $4,231.82. In addition, Richard is employed with the United States Air Force Reserve for which he receives a gross income per month of approximately $1,122.62.

The trial court awarded Rosalie and Richard joint custody of the three children. Rosalie has primary physical custody of Heather, subject to Richard's right of reasonable visitation. Heidi is to continue to

Wellington W. Tully, Jr., Paul F. Shoemaker, Henson & Efron, P.A., Minneapolis, for respondent.

live at DeMar Children's Home. Physical custody of William is shared; Rosalie has primary physical custody 55% of the time, and Richard has primary physical custody 45% of the time.

## ISSUES

1. Did the trial court err in calculating Richard's income for purposes of establishing child support and maintenance obligations?

2. Did the trial court err in calculating Richard's child support obligation in light of the joint physical custody arrangement?

3. Did the trial court abuse its discretion in awarding Rosalie spousal maintenance?

4. Did the trial court abuse its discretion in awarding Rosalie attorney fees?

## ANALYSIS

1. *Calculation of net income*

■ The trial court found Richard's net monthly income to be $3,971. The court based its finding on pay stubs for the first six months of 1986, which were submitted as exhibits at trial. Richard contends the withholding amounts on those pay stubs do not accurately reflect his post-dissolution tax liabilities as a single taxpayer with one withholding allowance, which should have been taken taken account by the court in establishing his child support and maintenance obligations.

The trial court's findings of fact will not be set aside unless clearly erroneous. *See* Minn.R.Civ.P. 52.01. At trial, Richard did not present any evidence concerning his post-dissolution tax liabilities. Rather, his proposed findings suggested to the trial court that his monthly income should be calculated presuming single marital status and using three withholding allowances. Richard based his use of three withholding allowances on this request that he be awarded the exemption allowances for Heather and William. However, the trial court did not award Richard the withholding allowances.

Minn.Stat. § 518.551, subd. 5 (1986) sets out guidelines which are to be used by the court as a basis for establishing child support obligations. The child support guidelines recommend the use of *standard deductions from tax tables* in calculating net income. *Id.* (emphasis added).

In *Deliduka v. Deliduka,* 347 N.W.2d 52 (Minn.Ct.App.1984), the husband claimed the trial court miscalculated his income tax rate. At trial he introduced pay statements reflecting taxes withheld but made no effort to provide facts concerning his income tax liabilities. In a motion for amended findings, he alleged the withholding amounts on the paystubs did not accurately reflect his tax liabilities and offered new figures totally unsupported by the trial record. This court held:

> We will not disturb the trial court's maintenance or child support awards on the basis of unsubstantiated claims and self serving figures as to a party's income tax liabilities. The trial court's net income computations are supported by the evidence presented at trial and are not clearly erroneous. Therefore, they must stand.

*Id.* at 57.

In his motion for amended findings, Richard did not submit any additional evidence regarding his post-dissolution tax liabilities. In his brief, Richard proposes using an arbitrary net monthly income figure of $3,250. This figure is calculated presuming single status and using three withholding allowances. However, there is no explanation of the method used to arrive at this figure, nor any indication of the tax table used.

In *Larson v. Larson,* 370 N.W.2d 707 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Sept. 26, 1985), the husband chose not to submit additional evidence at trial, but after trial submitted pay stubs showing increased deductions with no other information. This court held:

> The new figures were unsupported by the trial record, and as this court held in *Deliduka,* * * * the trial court's findings will not be disturbed.

*Larson,* 370 N.W.2d at 708 (citation omitted).

While Richard's argument has some merit, the trial court's findings are supported by the evidence in the record and therefore will not be disturbed.

Richard also argues the trial court overestimated his 1986 monthly income from the Air Force Reserve and his projected future income from the Reserve. We find the trial court's findings regarding Richard's net monthly income from the Air Force Reserve are supported by the record and, therefore, are not clearly erroneous.

### 2. *Child support*

■ The trial court found it fair and equitable to deviate downward from the child support guidelines in recognition of the parties' shared custody arrangement for William and ordered Richard to pay $600 per month as support for William. Richard argues the trial court should have used the calculations set out in *Hortis v. Hortis,* 367 N.W.2d 633 (Minn.Ct.App. 1985), and followed in *Valento v. Valento,* 385 N.W.2d 860 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. June 30, 1986), in setting support obligations in light of the shared physical custody arrangement.

In *Hortis,* the parties were granted joint custody with each party having physical custody for approximately one half of the year. *Id.* at 634. The trial court determined the husband's support obligation by taking his support obligation under the guidelines and subtracting the wife's support obligation under the guidelines. This court held, absent a showing the children's needs require a higher level of support from the parent with the higher income, the

> guidelines should be straightforwardly applied, i.e., by requiring [the husband] to pay the monthly support indicated by the guidelines during the months [the wife] has custody, and requiring [the wife] to pay support according to the guidelines during the months [the husband] has custody.

*Id.* at 636.

In *Valento,* this court held the same method for calculating support obligations

used in *Hortis* should be used in all joint custody situations, unless there are specific reasons for departure. *Id.* at 862. An upward departure is authorized without express findings only if the parties agree or if the court makes further findings. *Id.* at 862 (citing Minn.Stat. § 518.551, subd. 5(e) (1984)).

Rosalie argues the trial court's award of child support is consistent with the holding in *Moylan v. Moylan,* 384 N.W.2d 859 (Minn.1986), and *Lujan v. Lujan,* 400 N.W. 2d 443 (Minn.Ct.App.1987). In *Moylan,* which was decided before *Valento,* the Minnesota Supreme Court stated that the guidelines should be utilized "as starting points for the determination of child support awards." *Id.* at 863.

In *Lujan,* this court held *Moylan* and the 1986 statutory amendment to Minn.Stat. § 518.551, subd. 5(b), which sets forth several factors the trial court should consider in setting or modifying child support awards, preclude a mechanical guidelines calculation. *Lujan,* 400 N.W.2d at 446. The *Lujan* court stated:

> [I]t is of doubtful value to attempt a thorough cross-award analysis to substitute for a simple, direct finding as to respondent's fair contribution, the approach originally utilized by the trial court referee.

*Id.* In a footnote, the *Lujan* court cites *Wolter v. Wolter,* 382 N.W.2d 896 (Minn. Ct.App.1986), which held when the parents either share custody or the noncustodial parent has physical custody of the child for a substantial period of time, the court has discretion to structure child support in a way that fairly reflects needs and financial circumstances. *Id.* at 900.

The *Lujan* court did not discuss *Valento.* However, our analysis of both *Valento* and *Lujan* reveals the two cases are not necessarily inconsistent. The trial court can choose to structure a child support award using the cross-award formula or a fair contribution formula or any other kind of formula, so long as the award fairly reflects needs and financial circumstances. *See Wolter,* 382 N.W.2d at 900.

In this case, the trial court found $600 would meet William's financial needs while he was in Rosalie's custody 55% of the time. The trial court has broad discretion with respect to support of children and will not be reversed unless clearly erroneous. *Justis v. Justis*, 384 N.W.2d 885, 890 (Minn. Ct.App.1986), *pet. for rev. denied* (Minn. May 29, 1986). We find the trial court has not abused its discretion in awarding child support.

### 3. *Maintenance*

■ The trial court awarded Rosalie spousal maintenance of $300 per month for three years. This award was based on the court's finding that Rosalie had the bulk of the responsibility of caring for Heidi, during which time she was unable to maintain a full-time job outside the home, and on her desire to obtain a master's degree, which would take her approximately three years.

The standard of review on appeal from a trial court's determination of a maintenance award is whether the trial court abused the discretion accorded to it. *Krick v. Krick*, 349 N.W.2d 350, 352 (Minn.Ct. App.1984).

The trial court may grant a maintenance order for either spouse if it finds the spouse seeking maintenance:

> (a) lacks sufficient property, including marital property apportioned to the spouse, to provide for reasonable needs of the spouse considering the standard of living establihed during the marriage, *especially, but not limited to, a period of training or education* * * *.

Minn.Stat. § 518.552, subd. 1 (1986) (emphasis added).

In *Hein v. Hein*, 366 N.W.2d 646 (Minn. Ct.App.1985), the trial court awarded the wife $300 a month spousal maintenance for three years, reasoning she "will be able to accelerate completion of her education and increase her earning capacity". *Id.* at 650. The husband argued she did not need maintenance because she had ample property and employment to meet her needs. This court held the award was not an abuse of discretion. *Id.*

In *Fick v. Fick*, 375 N.W.2d 870 (Minn. Ct.App.1985), the husband appealed the trial court's award of $200 per month spousal maintenance for eight years. This court held:

> Given [the wife's] comparatively limited earning potential and the likelihood that she will pursue further education, the trial court's award of maintenance for eight years bears a reasonable relationship to its underlying basis * * *.

*Id.* at 873.

Given the trial court's broad discretion, we find the award of spousal maintenance in the amount of $300 per month for three years was not an abuse of discretion.

### 4. *Attorney fees*

■ Rosalie incurred attorney fees and costs totalling $11,629,95. The trial court found, given the disparity in the parties' incomes and the amount and nature of the property awarded to each, Richard should pay one half of Rosalie's attorney fees and costs. Minn.Stat. § 518.14 (1986) permits the court to adjudge cost and disbursements against either party. Allowance of attorney fees in dissolution cases rests almost entirely in the discretion of the trial court and an award should not be disturbed absent a clear abuse of discretion. *Deliduka*, 347 N.W.2d at 57. Given the court's broad discretion, we find the award of attorney fees was not an abuse of discretion.

### DECISION

Affirmed.