**In Re the Marriage of Bonnie Y. MOYLAN, petitioner, Respondent,**

v.

**Gerald G. MOYLAN, Appellant.**

**No. C6–87–2133.**

Court of Appeals of Minnesota.

May 17, 1988.

Richard D. Goff, Goff, Kaplan & Wolf, P.A., St. Paul, for respondent.

J. Christopher Cuneo, Smith, Juster, Feikema, Malmon & Haskvitz, Chartered, Minneapolis, for appellant.

Heard, considered and decided by FOLEY, P.J., and RANDALL and KALITOWSKI, JJ.

## OPINION

FOLEY, Judge.

This is an appeal from the denial of a post-dissolution motion to effectuate the terms of the amended judgment and decree dissolving the marriage between appellant Gerald G. Moylan and respondent Bonnie Y. Moylan. We affirm in part, reverse in part and remand.

## FACTS

Gerald and Bonnie's marriage was dissolved in 1975 by judgment and decree which incorporated the terms of a stipulation agreed to by the parties. The decree provided, among other things, that the parties' homestead be placed in tenancy in common, with each of the parties owning an undivided one-half interest therein. Bonnie was awarded rent-free occupancy of the home until any of the following events occurred:

A. The youngest child, Wendy E. Moylan, becomes 18, emancipated, or

B. In the event [Bonnie] remarries or lives on a permanent relationship with a male, or

C. Upon [Bonnie's] death or abandonment of the property.

When any of these triggering events occurs, the property is to be sold and the net proceeds of the sale divided evenly between the parties.

In addition to cash maintenance payments, the decree required Gerald to pay Bonnie's half of the mortgage payments, including insurance and real estate taxes, until the mortgage is paid in full, at which time each party becomes responsible for one-half of the insurance and real estate taxes.

The decree further provided that Bonnie is responsible for making all minor repairs to the home and maintaining its furnishings, including carpeting and drapes. The cost of any major repairs to the home are to be split evenly between the parties.

In 1984 Bonnie made a motion to increase Gerald's child support obligation. Gerald appealed the trial court's modification to this court, which affirmed. *See Moylan v. Moylan,* 368 N.W.2d 353 (Minn. Ct.App.1985). The Minnesota Supreme Court reversed and remanded to the trial court for reconsideration and express findings on the factors listed in Minn.Stat. § 518.64 (1984). *See Moylan v. Moylan,* 384 N.W.2d 859 (Minn.1986).

On remand, the trial court issued findings of fact which stated in part:

It appears to the Court that the homestead was treated by the parties as a property settlement between the parties and not as a support payment on behalf of the children.

    *    *    *    *    *    *

The events triggering the eventual homestead sale do not depend upon Wendy Moylan except that the latest date for the sale of the homestead would be her 18th birthday. The sale of the homestead does not depend upon her living, or living in the home, or being in the custody of her mother. Rather, the events turn on * * * Bonnie Moylan.

The amended judgment and decree entered on March 27, 1987 did *not* alter the provisions of the 1975 decree with respect to the homestead.

Wendy turned 18 on October 4, 1987. In June of 1987, Gerald wrote to Bonnie reminding her the home was to be sold in October and suggesting they utilize the services of a Coldwell Banker real estate agent he had contacted to sell the home. The letter also discussed the condition of the home and Bonnie's failure to reimburse Gerald for her portion of property taxes paid since 1984, when the mortgage was paid in full.

Coldwell Banker inspected the home and prepared a market analysis which set the market price of the home at $85,900 to $92,900. The market analysis also listed several conditions in the home which warranted repair or maintenance. Gerald executed a listing agreement with Coldwell Banker at the indicated price.

Bonnie met with Coldwell Banker on July 24, 1987. She objected to portions of the market analysis and the listing price and refused to sign the listing agreement. Bonnie then had a market analysis prepared which stated the market value of the home ranges from $96,000 to $102,000, depending on repairs and maintenance completed.

Gerald brought a motion asking the trial court to: (1) order Bonnie to execute the Coldwell Banker listing agreement and cooperate in the sale of the home; (2) order Bonnie to make all necessary repairs to the home; (3) order Bonnie to vacate the home on or before October 1, 1987, or, in the alternative, establish the amount of rent she must pay beginning October 4, 1987 if the home is not sold before then; (4) order Bonnie to pay the amount she owes for her share of property taxes owed for 1984–1986; and (5) grant him reasonable attorney fees. Bonnie filed a countermotion asking the trial court to deny Gerald's motion in all respects and grant her reasonable attorney fees. Bonnie's affidavit in support of her motion stated she had no objection to signing a listing agreement so long as the parties agreed on a real estate agent and a listing price.

The hearing on this motion was held before a second trial court judge on September 14, 1987. Bonnie argued Gerald's mo-

tion was premature. She stated she did not object to selling the home at one of the triggering events, the first of which would occur on October 4, 1987. Bonnie stated her only objection to the sale was the listing price. She asked the trial court to either dismiss the motion as premature or order the parties to co-list the home and set the listing price.

The trial court issued its order on October 2, 1987, finding:

6. That the parties youngest child, Wendy E. Moylan, will turn 18 years of age on October 4, 1987. Further, that the parties youngest child, Wendy E. Moylan, will not graduate from secondary school until the spring of 1988.

7. That the youngest child, Wendy E. Moylan, will still be under the control and supervision of [Bonnie]. Further, that Wendy Moylan's turning 18 years of age will not act to sever the parent-child relationship. She will continue to live with [Bonnie] who will be providing food, shelter, and clothing.

8. That as regards the occupancy of the parties homestead, the Amended Judgment and Decree evinces an intent which takes into account the best interests of the aforesaid child, Wendy E. Moylan.

9. That the best interests of the child would be served by allowing her to remain in the homestead with [Bonnie] until she has completed her high school education.

10. That the court received evidence regarding various repairs to the homestead which [Gerald] argues must be made by [Bonnie] at her sole expense, including:

(a) Staining the exterior of the home;

(b) Replacing ceramic tiles and the grout in the bathroom;

(c) Repair of garage water damage and a water leak in the bathroom;

(d) Replacement of kitchen cabinet doors and refinishing all woodwork;

(e) Repair of the kitchen garbage disposal;

(f) Replacement of missing pieces of oak parque floor and refinishing of the floor in the dining area;

(g) Replacement of the garage door;

(h) Resurfacing of the driveway.

11. That pursuant to the Amended Judgment and Decree, dated March 27, 1987, repairs to the home were to be made as follows:

That [Bonnie] shall be responsible for making all minor repairs to the home and for maintaining its furnishings, including carpeting and drapes. That [Gerald] shall share the cost of any major repairs to the home on a 50–50 basis.

12. That the repairs which [Gerald] requests be made would result in a substantial cost to [Bonnie] and would increase the value of the parties homestead.

Based on these findings, the trial court concluded Bonnie may continue to reside in the home until Wendy graduates from high school. The trial court also concluded the repairs needed to be made were not "minor" repairs as contemplated by the amended judgment and decree, and that neither party was entitled to an award of attorney fees.

## ISSUES

1. Did the trial court err in modifying the amended judgment and decree?

2. Did the trial court err in refusing to order Bonnie to pay rent for exclusive occupancy of the home after October 4, 1987?

3. Did the trial court err in determining the necessary repairs were not "minor" as contemplated by the amended judgment and decree?

4. Did the trial court abuse its discretion in refusing to award attorney fees?

## ANALYSIS

This is the third time this matter has been before an appellate court. After all of the litigation that has taken place between these parties, it is regrettable this matter necessitates judicial resolution. The parties have incurred additional legal fees and expended valuable judicial re-

sources in a case that should have been settled and will border on the edge of mootness by the time a decision is issued.

1. Modification of a judgment and decree is governed by Minn.Stat. § 518.64, subd. 2 (Supp.1987), which provides in part:

> *Except for an award of the right of occupancy of the homestead,* provided in section 518.63, all divisions of real and personal property provided by section 518.58 shall be final, and may be revoked or modified only where the court finds the existence of conditions that justify reopening a judgment under the laws of this state.

(Emphasis added.)

■ Modification of an award of occupancy of the homestead, like modification of maintenance and support, is proper only when the party seeking modification can show a material change in circumstances. *Angelos v. Angelos,* 372 N.W.2d 405, 407–408 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Oct. 24, 1985).

■ Neither party argued any change in circumstances which would justify modifying the award of occupancy. In fact, the parties did not dispute the home had to be sold. At the hearing on the motion, the parties only disputed the listing price and the listing agent. The trial court did not make any findings regarding a material change in circumstances justifying modification. Instead, the trial court relied on a "best interests of the child" analysis in modifying the amended judgment and decree to allow Bonnie to continue to occupy the home until Wendy graduates from high school.

The trial court stated it was construing and interpreting the amended judgment and decree rather than modifying it. However, the amended findings of fact specifically stated the homestead was treated as a property settlement between the parties and not a support payment on behalf of the children. Yet, the trial court found the amended judgment and decree "clearly indicates that the interest of the parties child was considered in ruling on the homestead question."

The trial court erred in *sua sponte* modifying the meaning and effect of the triggering events in the amended judgment and decree by extending Bonnie's right of occupancy until Wendy graduates from high school. The reliance on a "best interests of the child" analysis as a basis for modification of occupancy of the homestead is contrary to the amended judgment and decree and has no support in the law.

■ 2. The amended judgment and decree specifically states Bonnie is entitled to "occupy said homestead, *without paying any rent,* to [Gerald] for his one-half interest in the home, *until* any of the [triggering] events occur," after which the home is to be sold. (Emphasis added.) It is silent as to what, if any, obligation to pay rent arises after the occurrence of one of the triggering events. Gerald argues that as of October 4, 1987 Bonnie is obligated to pay him rent for his one-half interest in the home, which he estimates is in excess of $300 per month.

Because of the unique circumstances of this case, Bonnie should not be required to pay rent pending the sale of the homestead. The 1975 decree contemplates Bonnie having rent-free occupancy until the home is sold. Although the trial court erred in continuing Bonnie's occupancy until Wendy graduates from high school, she should still be entitled to occupy the home without paying rent until the home is sold.

However, in the event Bonnie does not cooperate in the immediate sale of the home and causes undue delay, the trial court may impose appropriate sanctions, including payment of rent.

■ 3. Gerald contends the trial court erred in concluding the repairs required to be made on the home are not "minor" as contemplated by the judgment and decree.

The trial court found the required repairs would result in substantial cost to Bonnie and would increase the value of the home. Findings of fact shall not be set aside unless clearly erroneous. Minn.R.Civ.P. 52.01. The affidavits in support of the parties' motions state the cost of the estimated repairs is $5,480, and the repairs are ex-

pected to increase the value of the home by $6,000 to $8,000.

The trial court's findings are not clearly erroneous and will not be set aside.

4. Both parties sought an award of attorney fees. The trial court concluded the costs and attorney fees were incurred in a good faith effort to resolve a dispute and ordered each party to bear his or her own costs and attorney fees.

Allowance of attorney fees in dissolution cases rests almost entirely in the discretion of the trial court. *Deliduka v. Deliduka,* 347 N.W.2d 52, 57 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. July 26, 1984). Here, the trial court did not abuse its discretion by requiring the parties to bear their own costs and attorney fees.

## DECISION

The portion of the trial court's order allowing Bonnie to continue to reside in the home until Wendy graduates from high school is reversed. The remaining portions of the order are affirmed. We remand to the trial court for an order requiring the immediate sale of the home and setting the listing price and listing agent.

Affirmed in part, granted, reversed in part and remanded.