In re Bruce J. MacMEEKEN, Debtor.

Bruce J. MacMEEKEN,
Plaintiff/Appellee,

v.

Rita Y. MacMEEKEN,
Defendant/Appellant.

No. 89–4183–S.
Bankruptcy No. 89–0015.
Adv. No. 88–41417–7.

United States District Court,
D. Kansas.

July 31, 1990.

David P. Troup, Junction City, Kan., for plaintiff-appellee.

Charles T. Engel, Topeka, Kan., Henry W. Green, Leavenworth, Kan., for defendant-appellant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on appeal from a July 24, 1989, decision of the bankruptcy court determining that a one-half of the debtor's military retirement pay, property set aside to debtor's ex-wife in a divorce proceeding, was property of the debtor's estate and was dischargeable in the bankruptcy.

Specifically, appellant contends that the bankruptcy court erred in its decision in two respects. First, appellant argues that bankruptcy court erred in applying the doctrine of collateral estoppel to a state court decision holding that the MacMeekens intended the award of military retirement pay in the divorce to be in the nature of a property settlement. Second, appellant argues that the bankruptcy court erred as a matter of law in holding that 10 U.S.C. § 1408 (the Uniformed Services Former Spouses' Protection Act) limits the power of a state divorce court to awarding no more than one-half of a service member's disposable military retired pay to the service member's spouse.

As an initial matter, the court finds that it has jurisdiction over this appeal under 28 U.S.C. § 158. Further, the standards of review on appeal are well-settled. The district court functions as an appellate court and is authorized to affirm, reverse, or modify the bankruptcy court's ruling or to remand the case for further proceedings. Fed.R.Bankr. P. 8013. The district court may examine the bankruptcy court's conclusions of law *de novo*. *In re Mullet*, 817 F.2d 677, 679 (10th Cir.1987). The bankruptcy court's findings of fact must be upheld unless they are clearly erroneous. *Id.*

*Statement of Facts*

In its Memorandum of Decision, the bankruptcy court made the following findings of fact:

> Debtor and Mrs. MacMeeken were married on June 14, 1964. Two children were born to the marriage. Sometime in 1987, Mrs. MacMeeken petitioned for divorce in Geary County District Court.

> At that time, only one of the children had reached majority. Debtor was also facing a possible paternity suit by a third party. Intending to reduce his assets available to any successful plaintiff, particularly his military retirement benefits, debtor entered into a Property Settlement Agreement on August 20, 1987. The agreement provided:

> 14. RETIREMENT BENEFITS: The parties acknowledge that they have been married for twenty-three (23) years, during which time the husband has served sixteen (16) years on active duty in the military service. It is agreed that as a division of property the wife shall be entitled to the whole amount of the husband's disposable military retirement benefit.

> The agreement was approved by the court and incorporated in the divorce decree issued September 17, 1987.

> On August 30, 1988, debtor filed a motion requesting the District Court to interpret the property settlement agreement. In a Memorandum Decision entered October 17, 1988, the court found that the parties' intent was to treat the payment of retirement pay as a division of property and not support or alimony, and that the denomination of the pay as alimony was for tax purposes only.

> Debtor filed a voluntary petition for chapter 7 relief on November 3, 1988, and filed a complaint to determine dischargeability of the retirement pay on January 20, 1989.

*In Re: MacMeeken*, No. 88–41417–7, slip op. at 4–5 (Bankr.D.Kan., *unpublished,* July 24, 1989).

*I.  Did the bankruptcy court err in holding that 10 U.S.C. § 1408 limited the power of a state divorce court to awarding no more than one-half of disposable military retired pay to the service member's spouse?*

█ The specific issue before the court in Rita MacMeeken's appeal is whether Subsections 1408(d) and 1408(e) of the Uniformed Services Former Spouses Protection Act (hereafter, the "USFSPA" or the "Act"), preempt a state court's authority over disposable military retired pay and limit the state court to awarding no more than one-half of the disposable military retired pay to the service member's spouse. Because this is a question of law, the court's standard of review on this issue is *de novo. See In re Mullet,* 817 F.2d at 679.

The question of the state court's authority vis-a-vis a service member's retired pay has long been a subject of dispute. *See, e.g.,* Arruebarrena, *Applying Louisiana's Community Property Principles to Pensions,* 33 Loyola L.Rev. 241, 276–87 (1987); Comment, *The Uniformed Services Former Spouses Protection Act: A Partial Return of Power,* 11 W.St.U.L.Rev. 71 (1983).[1] In 1981, the United States Supreme Court's holding in *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), created the impetus for the enactment of the USFSPA. In *McCarty,* the Supreme Court held that federal law governing military retirement pay prevented state courts from treating military retirement pay as community property; thus, military retirement pay, a valuable asset, was deemed to belong to the service member alone and was not subject to division in a divorce proceeding. In reaching this conclusion, the Supreme Court stated that allowing state court's to divide military retirement pay would "do clear dam-

---

**1.** State courts, for example, are split on their interpretations of whether the fifty percent limitation of § 1408(e)(1) limits state court authority in making awards of military retirement pay. *Compare Beesley v. Beesley,* 114 Idaho 536, 758 P.2d 695 (1988); *Bullock v. Bullock,* 354 N.W.2d 904 (N.D.1984); *Deliduka v. Deliduka,* 347 N.W.2d 52 (Minn.Ct.App.1984) *with In re Marriage of Smith,* 100 Wash.2d 319, 669 P.2d 448 (1983).

age to important military personnel objectives." 453 U.S. at 232–35, 101 S.Ct. at 2741–43. The Court also reasoned that Congress intended the military retirement pay to reach the veteran and no one else. *Id.* at 228, 101 S.Ct. at 2739.

Congress responded to *McCarty* by enacting the USFSPA in 1982. The Act expressly authorizes state courts to treat "disposable retired or retainer pay" as community property. 10 U.S.C. § 1408(c)(1). "Disposable retired or retainer pay" is defined as "the total monthly retired or retainer pay to which a military member is entitled," minus certain deductions. § 1408(a)(4). Under current Kansas law, military retirement benefits are considered property under K.S.A. 23–201, and therefore can be divided in a divorce. *In re Marriage of Harrison,* 13 Kan.App.2d 313, 769 P.2d 678 (1989).

The Act also creates a mechanism under which the federal government will make direct payments to a former spouse who presents to the Secretary of the relevant military service a state court order granting him or her a portion of the military retiree's disposable retired pay. Specifically, § 1408(d)(1), which creates the direct payments mechanism, provides, in relevant part:

> After effective service on the Secretary concerned of a court order providing for the payment of child support or alimony or, with respect to a division of property, specifically providing for the payment of an amount of the disposable retired or retainer pay from a member to the spouse or a former spouse of the member, the Secretary shall make payments (subject to the limitations of this section) from disposable retired or retainer pay of the member to the spouse or former spouse in an amount sufficient to satisfy the amount of child support and alimony set forth in the court order and, with respect to a division of property, in the amount of disposable retired or retainer pay specifically provided for in the court order....

The direct payments mechanism is subject to two express limitations. The first limitation is that only former spouses who were married to a military member "for a period of 10 years or more during which the member performed at least 10 years of service creditable in determining the member's eligibility for retired or retainer pay" can take advantage of the direct payments mechanism. § 1408(d)(2). The second limitation, and the one at issue here, is contained at Section 1408(e)(1) and states:

> The total amount of the disposable retired or retainer pay of a member payable under subsection (d) may not exceed 50 percent of such disposable retired or retainer pay.

As a general principle, a court will not find preemption absent evidence that it is "positively required by direct enactment." *Mansell v. Mansell,* —— U.S. ——, ——, 109 S.Ct. 2023, 2027, 104 L.Ed.2d 675, 684 (1989) (citing *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979) (quoting *Wetmore v. Markoe,* 196 U.S. 68, 77, 25 S.Ct. 172, 176, 49 L.Ed. 390 (1904))). In *Hisquierdo,* the Supreme Court stated a two-prong test for preemption: (1) whether the right asserted conflicts with express terms of federal law, and (2) whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition. 439 U.S. at 583, 99 S.Ct. at 809.

As the Supreme Court has noted, the first step in statutory construction is to examine the language of the statute. *See, e.g., Mansell,* —— U.S. at ——, 109 S.Ct. at 2028, 104 L.Ed.2d at 685. In this case, the court finds that the language of the statute, including subsections 1408(d) and (e), does not expressly state that the fifty percent limitation on the direct payments mechanism limits the authority of a state court in dividing military retired pay. In particular, the language of the subsection expressing the fifty percent limitation, 1408(e)(1), only refers to the total amount of disposable retired pay *payable under subsection (d),* which authorizes the Secretary of the relevant service branch to make direct payments to the spouse or former spouse. It does not say, for example, "the total amount of the disposable retired or

retainer pay that may be awarded by a state court to a former spouse may not exceed fifty percent of such disposable retired or retainer pay," which would be unambiguous. Therefore, the court finds that there is nothing in the language of subsection (e)(1) to create the sort of limitation on a state court's authority found by the Supreme Court in *Mansell. Cf.* at ——, 109 S.Ct. at 2031, 104 L.Ed.2d at 689 (holding that under the plain language of 1408(a)(4)(B)–(C), state courts were limited to dividing "disposable retired pay;" thus, state courts could not award military retirement pay that has been waived to receive veterans disability benefits).

Further, the savings clause of the Act provides:

> Nothing in this section shall be construed to relieve a member of liability for the payment of alimony, child support, or other payments required by a court order on the grounds that payments made out of disposable retired or retainer pay under this section have been made in the maximum amount permitted under [the direct payments mechanism]. Any such unsatisfied obligation of a member may be enforced by any means available under law other than the means provided under this section in any case in which the maximum amount permitted under ... [the direct payments mechanism] has been paid.

10 U.S.C. § 1408(e)(6). When the language of the savings clause is read in conjunction with other statutory provisions which expressly recognize and preserve, without stated amount or percentage limitations, a state court's authority to award military retired pay as support or as property division, the court does not find that the statutory language expressly or impliedly limits the amount of military retired pay which a state court can award to a former spouse in a divorce proceeding. On the contrary, the court reads the fifty percent limitation as referring merely to amounts which will be paid directly to the former spouse by the Federal Government under the direct payments mechanism set up in 10 U.S.C. § 1408(d)(1).

The court finds that this interpretation of the statute is also supported by the structure of the Act. Subsection (a) of section 1408 defines terms used in the Act. Subsection (b) states when a court order will be deemed effectively served and "regular on its face." As the Supreme Court noted in *Mansell,* subsection (c) of the Act sets out the substantive limitations on a state court's authority to treat military retired pay as community property, at ——, 109 S.Ct. at 2029–30, 104 L.Ed.2d at 686–87. Subsection (c)(1) of section 1408, for example, states that, subject to the limitations expressly stated in section 1408, a court may treat disposable retired pay (as that term is defined in the definitions subsection (a)), either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court. Subsections (c)(2)–(4) set out further limitations.

By contrast, subsections (d) and (e) concern enforcement. Subsection (d) defines the respective Secretaries' responsibilities in making payments to a former spouse. Subsection (e) on its face modifies subsection (d), further defining how the Secretary shall make payments under subsection (d) and, if necessary, resolve conflicts between various court orders which may be served upon him or her. The fifty percent limitation contained in subsection (e) would appear, therefore, to modify only the payments which may be made by a Secretary under the subsection (d) direct payments mechanism. It is, in the court's view, noteworthy that Congress did not choose to place the fifty percent limitation in subsection (c) which contains the substantive limitations on state court authority to treat disposable retired pay as property subject to division in a divorce. *See Mansell,* at ——, 109 S.Ct. at 2029–30, 104 L.Ed.2d at 686–87.

Further, the court finds that the first limitation on use of the direct payments mechanism, the "ten-and-ten requirement," produces a useful analogy in discerning Congressional intent concerning the second, i.e., fifty percent, limitation. As discussed above, only spouses who have been married to a service member for ten years

or more during which the service member performed at least ten years of creditable service may take advantage of the direct payments mechanism in subsection (d) (the so-called "ten-and-ten requirement"). § 1408(d)(2). As the Supreme Court noted in footnote 13 of the *Mansell* opinion, spouses who do not meet the ten-and-ten requirement are not totally precluded from receiving an award of military retirement pay; they simply are not allowed to take advantage of the direct payments mechanism of 1408(d)(1). Therefore, the *Mansell* Court found that "Congress intended the substantive limits in § 1408(c)(1) to be, to some extent, distinct from the limits on the direct payments mechanism contained in § 1408(d). . . ." at ——, n. 13, 109 S.Ct. at 2030, n. 13, 104 L.Ed.2d at 687, n. 13. Therefore, the structure of the Act does not, in the court's view, reveal any Congressional intent to impose the fifty percent limitation on the state court's authority in awarding disposable retired pay.

The third resource to be consulted in statutory construction is the legislative history. As stated in the Senate Report on the proposed Act, "[t]he primary purpose of the bill is to remove the effect of the United States Supreme Court decision in *McCarty v. McCarty*. . . ." S.Rep. No. 502, 97th Cong., 2d Sess. 1, *reprinted in* 1982 U.S.Code Cong. & Admin.News 1555, 1596. In this case, the court finds nothing in the legislative history which would mandate a conclusion that Congress intended to limit the state court's authority to award more than fifty percent of a military member's retired pay.

In holding that the fifty percent limitation contained in § 1408(e)(1) limited the state court's authority to award military retired pay to Rita MacMeeken, the bankruptcy court stated its reasoning as follows:

> Any other construction of these sections [§ 1408(d)(1) and (e)(1)] would render them meaningless. Congress in enacting the Former Spouses Protection Act was concerned that nonmilitary spouses receive their fair share of retirement pay, often accumulated at the expense of the nonmilitary spouse's own retirement. It

was also concerned with protecting the interest of the military member. Congress specifically rejected the rationale of *McCarty* that retirement pay was intended for the veteran and no one else and passed legislation intended to be fair and equitable to both spouses. See *Mansell*, —— U.S. at —— [, 109 S.Ct. at 2026]. There would be no point to including the direct payment mechanism if Congress intended to allow payment of the total pay to the spouse of the military member but required the military member to personally receive and turn over some portion to his ex-spouse.

*In re: MacMeeken*, Memorandum of Decision at 11.

The court does not find the bankruptcy court's reasoning as quoted above persuasive. As noted in its legislative history, prior to the passage of the USFSPA, there was no federal enforcement mechanism for court-ordered property division of military retired pay available to former spouses of military personnel. H.R.Conf.Rep. No. 749, 97th Cong., 2d Sess. 166, *reprinted in* 1982 U.S.Code Cong. & Admin.News 1555, 1571. The direct payments mechanism contained in § 1408(d)(1) and proposed by a house amendment to the bill created a heretofore absent means of federal enforcement. *Id.* at 167, 1982 U.S.Code Cong. & Admin.News at 1572. Thus, subsection (d)(1) of § 1408 serves the important purpose of creating a means of enforcement; it does not, by its terms specify what is to be enforced, as the substantive limits on state court authority in making such orders is stated elsewhere in the section.

The discussion of the "enforcement limitation for a portion of retirement pay" contained in the Senate Report on the proposed bill supports this court's view that the fifty percent cap applies only to federal enforcement as contained in the direct payments mechanism and not to a state court's authority to award retirement pay. The Senate Committee agreed that some portion of the retirement pay should be "sheltered *in terms of the Secretaries' concerned enforcement* of court orders. . . ." S.Rep. No. 502, 97th Cong., 2d Sess. 11–12,

*reprinted in* 1982 U.S.Code Cong. & Admin.News 1555, 1606. The Report further states:

> Therefore, the committee circumscribed the authority of the Secretary concerned to prospectively enforce court orders for alimony, child support and property distribution. No more than 50 percent of the former member's disposable retired or retainer pay is payable *under the enforcement mechanism afforded to spouses and former spouses under the bill.*

*Id.* (emphasis added). The remaining language of the report makes clear that the fifty percent cap applies only to the "significant new enforcement rights" created by the direct payments mechanism. *Id.* The court has found nothing in the legislative history which would mandate the interpretation placed upon the Act by the bankruptcy court.

The Supreme Court's analysis in *Mansell* of the ten-and-ten requirement is instructive in rebutting the bankruptcy court's reasoning. If a spouse did not meet the ten-and-ten requirement, he or she could not take advantage of the direct payments mechanism but still could receive an award of military retired pay, at ——, n. 13, 109 S.Ct. at 2030, n. 13, 104 L.Ed.2d at 687, n. 13. In this situation, therefore, the military member in fact would be required to receive and turn over some portion of his or her retirement pay to his or her ex-spouse. Secondly, the savings clause expressly states that the Act does not relieve a service member of liability for court-imposed obligations, which may be enforced "by any means available under law other than the means [including the direct pay-

ments mechanism] provided under this section." § 1408(e)(6). Therefore, the court finds that a state court award, pursuant to a property settlement agreement, of a service member's entire disposable retired pay to a former spouse in a divorce does not conflict with the express terms of the Uniformed Services Former Spouses Protection Act.

The court also finds that the consequences of such an award does not "sufficiently injure the objectives of the federal program to require nonrecognition." *Hisquierdo,* 439 U.S. at 583, 99 S.Ct. at 809. Although an award of more than fifty percent of a service member's disposable retired pay to a former spouse may only occur rarely, as in this case, the court finds no evidence that such an award is injurious to Congress' objectives, including Congress' primary objective of allowing state courts to consider, subject to certain express limitations, disposable retired pay as property divisible in a divorce. *See, e.g.,* S.Rep. No. 502, 97th Cong., 2d Sess. 1, *reprinted in* 1982 U.S.Code Cong. & Admin.News 1555, 1596. In passing the Act, Congress attempted to strike a balance between the "distressed economic plight of military wives after a divorce" and the "interests of military members." *Mansell,* —— U.S. at ——, 109 S.Ct. at 2031, 104 L.Ed.2d at 688 (footnotes omitted). The court finds that the balance struck by Congress, as indicated in the discussion above, is not disturbed by the state court award to Rita MacMeeken. Although rare, this award is not beyond the scope of state authority contemplated by Congress in the Act.[2]

---

**2.** Further, the court notes that the state court's decree of divorce in 1987 which awarded the military retirement pay to Rita simply incorporated the terms of the parties' property settlement agreement. In October 1988, the court interpreted the agreement as expressing the parties' intention to completely divest Bruce of his interest in the military retirement pay. Although the court does not find this point necessary to its decision here and the present context, i.e., bankruptcy, differs, the court agrees with the decision on remand in *Mansell.* In that decision, the California court found that the parties' belief that the retirement pay in question was divisible community property, which

at the time was correct, should be given effect and that the (service member) husband who signed the agreement was "barred from complaining" about the agreement by virtue of his consent thereto. *In re Mansell,* 217 Cal.App.3d 219, 265 Cal.Rptr. 227 (1989), *reprinted in* 16 Fam.L.Rep. (BNA) 1111, 1112 (Jan. 16, 1990). The court further found that the dissolution court had subject matter jurisdiction to dispose of the military retirement benefits and, regardless of whether it did so wrongly, the decree could not be reopened. In its examination of this appeal, this court does not find any Congressional intent in the Act to prevent or protect

■ In summary, the court finds that the bankruptcy court erred in concluding that Section 1408 of the Uniformed Services Former Spouses Protection Act partially preempted the state court's authority to award military retirement pay to Rita Mac-Meeken. In so holding, this court is guided by the cardinal principle that it will not find preemption of state court authority, particularly in the domestic relations sphere, "absent evidence that it is 'positively required by direct enactment.'" *Mansell*, at ——, 109 S.Ct. at 2027, 104 L.Ed.2d at 684 (citing *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979) (quoting *Wetmore v. Markoe*, 196 U.S. 68, 77, 25 S.Ct. 172, 176, 49 L.Ed. 390 (1904))). In its examination of this issue, the court does not find that this is one of the "rare instances where Congress has directly and specifically legislated in the area of domestic relations." *Id.* Therefore, the court finds that the bankruptcy court erred in holding that section 1408 of the USFSPA limits a state court to awarding no more than fifty percent of disposable military retired pay to a former spouse; accordingly, the court will reverse.

In light of the court's holding above, the court finds that no discussion of the collateral estoppel issue raised on appeal is required.

IT IS BY THE COURT THEREFORE ORDERED that the July 24, 1989, decision of the bankruptcy court is reversed, as consistent with the above opinion.

service members from voluntarily disposing of their disposable retirement benefits as they choose, e.g., in the manner in which Bruce MacMeeken disposed of his interest in the property settlement agreement in his divorce.