588 S.E.2d 624

**Gay Ellen COON, Appellant,**

*v.*

**James Moore COON, Respondent.**

No. 3678.

Court of Appeals of South Carolina.

Heard April 9, 2003.
Decided Sept. 22, 2003.
Rehearing Denied Nov. 21, 2003.

344

Ronald L. Richter, Jr., of Charleston, for Appellant.

Alex B. Cash, of Charleston, for Respondent.

HOWARD, J.:

This is an action by Gay Ellen Coon ("Wife") to enforce the payment of retirement benefits previously ordered by the family court. James Moore Coon ("Husband") moved pursuant to Rule 60(b)(4), South Carolina Rules of Civil Procedure, to vacate the previously entered final order. Husband asserted the family court lacked subject matter jurisdiction to order payment of more than fifty percent of his disposable military retirement pay to his spouse because to do so violated the Uniformed Services Former Spouse's Protection Act ("USFS-PA"), 10 U.S.C.A. § 1408 (1998). The family court agreed and vacated the prior order. Wife appeals. We reverse and reinstate the family court's prior order.

## FACTS/PROCEDURAL HISTORY

In July 1999, the family court approved a settlement agreement between Husband and Wife, acknowledging the Husband's military retirement account was a marital asset subject to division. In accordance with the agreement, the order provided that Wife was entitled to one-hundred percent of the proceeds of Husband's military retirement account for nine years, and following the nine-year period, "the plan adminis-

trator will be directed to divided the proceeds equally between the parties."

No Qualified Domestic Relations Order ("QDRO") was sent to or approved by the Secretary of Defense in accordance with the USFSPA. Instead, Husband deposited the full amount of his retirement pay into a jointly held bank account, and Wife used the funds.

As a result, Husband was deemed the recipient of the funds and was responsible for the taxes. He did not withhold the proper amount of taxes in 1999 and part of 2000, so he withheld additional taxes in 2000 to cover out-of-pocket expenses he had incurred the previous year.

Wife then filed this enforcement action, arguing Husband violated the final order of July 1999 by increasing the amount of withholding deducted from the retirement benefit. Husband responded by filing a motion to vacate the original order approving the agreement pursuant to Rule 60(b)(4), arguing the order Wife sought to enforce was void for lack of subject matter jurisdiction because it allocated more than fifty percent of his disposable military retirement pay in violation of the USFSPA. The family court heard Husband's Rule 60(b)(4) motion and held Wife's rule to show cause in abeyance. The family court concluded:

> The provisions of the [USFSPA] limit[ ] this Court's *jurisdiction* as to military retirement pay to a total amount not to exceed fifty percent of the disposable retired pay. For this reason, any order of the Court which attempts to allocate any sum in excess of the said fifty percent is void for lack of this Court's jurisdiction.

(emphasis added).

On April 2, 2001, the family court sent its order to the clerk of court and to the parties' attorneys. Wife served her motion to reconsider on Husband on April 6, 2001, and on the clerk of court on April 9, 2001. However, she waited until she received a "clocked" copy of her motion from the clerk of court, in August 2001, before she served her motion on the presiding judge. On October 3, 2001, the family court issued an order reaffirming its ruling. In its order, the family court also indicated Wife's motion to reconsider was untimely because she did not provide the presiding judge with a copy of the

motion within ten days of filing. Wife served and filed her notice of appeal to this Court on November 1, 2001. This appeal follows.

## LAW/ANALYSIS

### I. Timeliness of Appeal

■ Initially, Husband asserts Wife's appeal to this Court is untimely because she failed to comply with the requirements of Rule 59(g), South Carolina Rules of Civil Procedure. Husband contends because Wife failed to serve a copy of her motion to reconsider on the family court within ten days of filing it with the clerk of court, the time for her appeal to this Court has expired. We disagree with Husband's reading of Rule 59(g) and find Wife's appeal to be timely.

Rule 59(g) requires "a party filing a written motion under this rule [to] provide a copy of the motion to the judge within ten (10) days after the filing of the motion." The notes to Rule 59 state the 1998 amendment adding subsection (g) was "intended to help insure that the judge is promptly *notified* that the motion has been filed." (emphasis added). As this Court discussed in *Gallagher v. Evert,* "[t]here is no indication that the failure to transmit a copy of the motion to the circuit court affects the tolling provision of Rule 203(b)(1), South Carolina Appellate Court Rules.[1] Therefore, the time for filing the notice of appeal did not begin to run until after the circuit court denied the motion." 353 S.C. 59, 63, 577 S.E.2d 217, 219 (Ct.App.2002). In accordance with Rule 59(g) and this Court's decision in *Gallagher,* we hold Wife was not required to file her notice of appeal until after the family court issued its order denying her motion to reconsider. Thus, her appeal to this Court is timely.

### II. USFSPA & Jurisdiction

Wife contends the family court erred by vacating its prior order. Wife asserts the family court had subject matter jurisdiction because the retirement account is marital proper-

---

1. Rule 203(b)(1) provides: "When a timely ... motion to alter or amend the judgment ... has been made, the time for appeal for all parties shall be stayed and shall run from receipt of written notice of entry of the order granting or denying such motion."

ty. We agree and hold the limitation on the percentage of retirement benefits the family court is permitted to allocate speaks to the family court's authority and not its subject matter jurisdiction. Thus, we reinstate the family court's prior order.

## A. Definition of Void

Initially, we note the posture of this case. Husband brought this motion pursuant to Rule 60(b)(4), South Carolina Rules of Civil Procedure, asserting the family court's prior final order approving the parties agreement was *void* for lack of subject matter jurisdiction. Thus, our inquiry is limited solely to determining the family court's subject matter jurisdiction in this matter.

■ "A void judgment is one that, from its inception, is a complete nullity and is without legal effect and must be distinguished from one which is merely 'voidable.'" *Thomas & Howard Co. v. T.W. Graham and Co.*, 318 S.C. 286, 291, 457 S.E.2d 340, 343 (1995) (quoting 46 Am.Jur.2d Judgments § 31 (1994)). "The definition of void under the rule ... encompasses ... judgments from courts which lacked subject matter jurisdiction." *McDaniel v. U.S. Fid. & Guar. Co.*, 324 S.C. 639, 644, 478 S.E.2d 868, 871 (Ct.App.1996) (internal quotations omitted); *see also Ross v. Richland County*, 270 S.C. 100, 103, 240 S.E.2d 649, 650 (1978) (holding that if " 'a court is without jurisdiction of the subject matter, any action with respect to such a cause, other than to dismiss it, is absolutely void'" (quoting *Fox v. Board of Regents of Univ. of Mich.*, 375 Mich. 238, 134 N.W.2d 146, 148 (1965))).

■ However, irregularities which do not involve jurisdiction do not render a judgment void. *Thomas & Howard Co.*, 318 S.C. at 291, 457 S.E.2d at 343.

[Furthermore,] [t]here is a wide difference between a want of jurisdiction in which case the court has no power to adjudicate at all, and *a mistake in the exercise of undoubted jurisdiction in which case the action of the trial court is not void although it may be subject to direct attack on appeal.* A judgment will not be vacated for a mere irregularity which does not affect the justice of the case, and of which

348

the party could have availed himself, but did not do so until judgment was rendered against him.

*Id.* (emphasis added) (internal citations omitted). Moreover, when a court acts with proper subject matter jurisdiction but takes some action outside of its authority, the party against whom the act is done must object and directly appeal. *See Cosgrove v. Butler,* 1 S.C. 241, 243 (1869) ("If such departures be not excepted to, the Court may consider objection to them as *waived.* And it may be asserted, as a general rule, that where there is no want of jurisdiction ..., [the Court's] judgment will be binding, even although affected by irregularity which would have defeated the proceeding if objection had been timely and properly made." (emphasis added)). Thus, if the family court had jurisdiction over the military retirement account, its original order is not void.

### B. *Jurisdiction v. Authority*

"Subject matter jurisdiction refers to the court's 'power to hear and determine cases of the general class to which the proceedings in question belong.'" *Watson v. Watson,* 319 S.C. 92, 93, 460 S.E.2d 394, 395 (1995) (quoting *Dove v. Gold Kist, Inc.,* 314 S.C. 235, 237–38, 442 S.E.2d 598, 600 (1994)). South Carolina Code Annotated section 20–7–420(2) (Supp. 2003) grants the family court the exclusive jurisdiction "[t]o hear and determine actions: [f]or divorce a vinculo matrimonii ... and in other marital litigation between the parties, and for settlement of all legal and equitable rights of the parties in the actions in and to the real and *personal property of the marriage.*" (emphasis added); *cf.* S.C.Code Ann. § 20–7–473 (Supp.2003) (stating the family court does not have jurisdiction to apportion nonmarital property).

In this case, the disputed property is a military retirement account, and we are required to examine the federal authority creating the property to determine its status. The USFSPA specifically permits state courts *"[s]ubject to the limitations of this section, ... [to] treat disposable retired pay ... either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court."* 10 U.S.C. § 1408(c)(1) (1998) (emphasis added). Clearly, Congress has chosen to

permit the states to determine independently whether to treat military retirement benefits as marital property.

Thus, we must turn to the applicable South Carolina authority to determine the status of a military retirement account in this State. In *Tiffault v. Tiffault*, our supreme court held military retirement benefits "constitute an earned property right which, if accrued during the marriage, is subject to equitable distribution." 303 S.C. 391, 392–93, 401 S.E.2d 157, 158 (1991). Therefore, pursuant to Congress' invitation, our state has determined military retirement accounts are marital property. However, were the law as settled as this concise statement from our supreme court might indicate, the current inquiry would not likely be before us.

Notwithstanding the holding in *Tiffault*, Husband argues the family court's subject matter jurisdiction is limited by the 1990 amendment to 10 U.S.C. § 1408(e)(1) (1998) [2]. A brief review of the history of the USFSPA is necessary to an understanding of this issue.

In *McCarty v. McCarty*, the United States Supreme Court ruled that the states had no authority to order the equitable distribution of military retirement benefits. 453 U.S. 210, 223, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). In direct response to *McCarty*, the USFSPA was enacted, and from its inception limited the percentage of disposable military retirement pay that could be allotted to a non-military spouse. The initial language restricted the amount the government administrator could pay to a non-military spouse to fifty percent. In construing this language, some states applied the fifty-percent limitation only to direct payments from the administrator but not to the aggregate amount that could be awarded to the non-military spouse. *See, e.g., Grier v. Grier*, 731 S.W.2d 931, 932–33 (Tex.1987) (holding the USFSPA did not limit the amount of retirement benefits that could be apportioned under Texas community property law but did limit the percentage of the military retirement benefit that was subject to direct pay-

---

2. The amendment states "[t]he total amount of the disposable retired pay of a member payable under all court orders pursuant to subsection (c) may not exceed fifty percent of such disposable retired pay." 10 U.S.C. § 1408(e)(1) (1998). Subsection (c) is entitled, "Authority for [state] court to treat retired pay as property of the member and spouse." 10 U.S.C. § 1408(c) (1998).

ment); *Deliduka v. Deliduka,* 347 N.W.2d 52, 55 (Minn.Ct. App.1984) (holding "a state court wishing to award a former spouse more than fifty percent of disposable retired pay must order direct government payments and payments by the member of the military to the spouse").

To address the various state court interpretations of the fifty-percent restriction, the 1990 amendment changed the restriction to apply to all court-ordered divisions of disposable military retirement pay pertaining to former spouses. 10 U.S.C. § 1408(e)(1) (1998). The 1990 amendment to the Act changed the manner in which the payment was restricted. After the 1990 amendment, the fifty-percent restriction on payment of disposable military retirement pay was reworded to apply to divisions of retirement benefits made under any court order pertaining to former spouses. *See* H.R.Rep. No. 101–665, 101st Cong. 2nd Sess. at 3004–05 (1990), !990 U.S.Code Cong, & Admin.News p. 2931.

The 1990 House Report stated that the amendment to subsection (e)(1) "reflect[ed] a public policy judgment on the appropriate role of the federal government in *limiting state court jurisdiction* in divorce cases involving military retired pay [and] is consistent with the balancing of state and federal interests that has been the hallmark of this law since its inception." H.R.Rep. No. 101–665, at 3005 (emphasis supplied by Husband). The report addressed the amendment's language by explaining that the provision stating "the aggregate amount of retired pay that would be payable to [former spouses] would not exceed fifty percent of the service member's disposable retired pay" applied both when a court orders the government administrator to pay the amount directly to the non-military spouse and when the amount is paid indirectly to the non-military spouse through the retired spouse. H.R.Rep. No. 101–665, at 3006; *see In re MacMeeken,* 117 B.R. 642, 644–45 (Bankr.D.Kan.1990) (indicating the pre–1990 subsection (e)(1) failed to clearly express that a non-military spouse should never be awarded more than fifty percent of the retired spouse's disposable military retirement pay, but rather, it appeared Congress intended for the fifty percent limit to apply *solely* to awards paid directly by the benefits administrator to the non-military spouse).

Based upon this report, Husband argues the limitation is jurisdictional, and therefore, the order was void. *Cf. Bowen v. Bowen*, 327 S.C. 561, 566, 490 S.E.2d 271, 273 (Ct.App.1997) (holding once the family court determined property was not marital property, the family court had no jurisdiction to address the property's ownership or "deal with [the property] in any way"). We disagree with Husband's reading of the 1990 amendment to subsection (e)(1).

■ It is generally recognized that the presumption of concurrent federal and state jurisdiction over cases involving federal law "can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981); *see Hairston v. Travelers Cas. & Sur. Co.*, 232 F.3d 1348, 1349–50 (11th Cir.2000) (quoting *Gulf Offshore*); *Resolution Trust Corp. v. Foust*, 177 Ariz. 507, 869 P.2d 183, 188 (Ct.App.1993) (adopting the reasoning of *Gulf Offshore*). However, there is nothing in the language of the Act, the amendment, or the legislative history indicating an intention to preempt state court subject matter jurisdiction. Having reviewed the entire House Report and in light of the history of the statute, we conclude the portion of the legislative history to which Husband refers does not evince an "unmistakable implication" to limit a state's court *subject matter jurisdiction* with respect to allocating more than fifty percent of a spouse's disposable military retirement pay. *Gulf Offshore*, 453 U.S. at 478, 101 S.Ct. 2870. In light of its context and usage, we conclude the use of the term "jurisdiction" in the report refers to this state's authority to award more than fifty percent of a spouse's disposable military retirement pay.

The USFSPA's savings clause further undermines any argument that Congress explicitly directed that the fifty-percent limitation is jurisdictional, thereby preempting traditional state rules regarding finality of judgments. The savings clause states: "A court order which itself . . . provides for the payment of an amount which exceeds the amount of disposable retired pay available for payment because of the limit set forth in [subsection (e)(1)] . . . shall not be considered to be irregular on its face solely for that reason." 10 U.S.C. § 1408(e)(5)

(1998). Congress anticipated state courts would issue orders awarding more than fifty percent of the disposable military retirement pay. However, in light of this prospect, Congress chose not to explicitly state that these orders would be void for lack of subject matter jurisdiction. Instead, this subsection purports to "save" these orders by indicating they should not be deemed irregular.

We have found no reported case in this or any other jurisdiction ruling that when a court awards more than fifty percent of a spouse's disposable military retirement pay that court lacks *subject matter jurisdiction.* Instead, the cases addressing this issue have held that an award of more than fifty percent of disposable military retirement pay is subject to direct attack on appeal and is reversible error. *See, e.g., In re Marriage of Bowman,* 972 S.W.2d 635, 637–39 (Mo.Ct.App. 1998) (*reversing, on direct appeal,* an award of more than fifty percent of a spouse's disposable military pay because it violated section 1408(e)(1), reasoning " 'the USFSPA permits a state court to consider the *gross* value of retirement benefits in computing the value of the marital estate. However, the USFSPA prohibits a state court from awarding the non-military spouse the right to collect more than fifty percent of the *net* monthly retirement payment.' ") (quoting *Beesley v. Beesley,* 114 Idaho 536, 758 P.2d 695, 699 (1988)) (emphasis in *Beesley*).

Although we have found no rulings directly on point, this Court's decision concerning military disability pay under the provisions of the USFSPA is instructive. *See Price v. Price,* 325 S.C. 379, 480 S.E.2d 92 (Ct.App.1996). In *Price,* the family court approved a settlement agreement in which the husband agreed to pay to his wife a certain amount of his total military retirement benefits, which included his disability pay an item not considered to be disposable military retirement pay under the USFSPA. 325 S.C. at 380, 480 S.E.2d at 92. Subsequently, the husband unilaterally reduced his payments to his wife because he had waived an additional amount of his retirement pay in favor of disability pay. The wife sought to compel the husband to make monthly payments according to the settlement agreement. *Id.* at 381, 480 S.E.2d at 92–93. Relying on *Mansell v. Mansell,* husband sought a reduction in the payments to his wife. 490 U.S. 581, 589–95, 109 S.Ct.

2023, 104 L.Ed.2d 675 (1989) (holding the USFSPA does not give state courts the authority to treat total military retirement benefits as property subject to equitable distribution). The family court granted the wife's motion to compel and this Court affirmed.

Although this Court acknowledged federal authority limiting the family court's consideration of disability benefits as marital property subject to equitable distribution, this Court held husband should not be permitted to complain the family court erred in enforcing the terms of the agreement he willingly entered into with his wife. *Price*, 325 S.C. at 383, 480 S.E.2d at 94. Notably, this Court concluded the federal limitation did not divest the family court of subject matter jurisdiction. *Id.* Thus, this Court affirmed the settlement agreement. *See McLellan v. McLellan*, 33 Va.App. 376, 533 S.E.2d 635, 637–39 (2000) (affirming the denial of the husband's motion to vacate a prior court order because it approved a settlement agreement awarding the wife a portion of the husband's military disability pay in violation of section 1408); *Forney v. Minard*, 849 P.2d 724, 729 (Wyo.1993) (refusing to vacate the trial court's order awarding wife one-hundred percent of her husband's military retirement pay even though the trial court ordered the benefits administrator to pay wife directly, finding the USFSPA's limitations do not restrict state jurisdiction to only fifty percent of the disposable retirement pay).

For the foregoing reasons, we conclude the family court erred in vacating its prior order for lack of subject matter jurisdiction.

## CONCLUSION

The family court's order vacating its prior order is **REVERSED**, and the original family court order approving the settlement agreement, which awarded Wife one-hundred percent of the proceeds of Husband's military retirement account for a nine-year period, is reinstated. We remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

STILWELL, J., and STROM, Acting Judge, concur.