IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 15, 2010

**ERDA M. GONZALEZ v. NEFTALI GONZALEZ**

**Appeal from the Chancery Court for Montgomery County**
**No. 98-10-0147      Laurence M. McMillan, Chancellor**

**No. M2008-01743-COA-R3-CV - Filed January 24, 2011**

Mr. Gonzalez filed a petition to alter his final divorce decree, alleging that the decree violates federal law by allowing the wife to receive more than 50% of his military retirement.  The trial court denied relief.  Mr. Gonzalez appealed.  We affirm, holding that federal law does not limit Tennessee trial courts to awarding a maximum of 50% of a former service member's retirement to the ex-spouse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed as Modified**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Mark Robert Olson, Clarksville, Tennessee, for the appellant, Neftali Gonzalez.

Erda M. Gonzales, Clarksville, Tennessee, Pro Se.

**OPINION**

Erda M. Gonzalez and Neftali Gonzalez were divorced by a final order entered January 11, 1999.  Paragraph 10 of the marital dissolution agreement provides, in pertinent part, as follows:

> [T]he Husband shall pay to the Wife and the Wife is hereby awarded one hundred (100%) percent of the Husband's net, disposable after-tax military retirement pay.[1]  Further, the Husband is agreeable to paying the Wife 100%

---

[1]References to "pension" or "retirement pay" in this opinion refer to the disposable after-tax military

(continued...)

of his retirement benefits due to the fact that he has secured employment out of the country after he retires from the military. Said payments of the retirement shall be paid by income assignment.

On April 22, 2005, Mr. Gonzalez filed a petition to alter the final decree, alleging that the wife should not receive alimony and that the decree violates federal law by allowing the wife to receive more than 50% of his military retirement. The former wife, now remarried and known as Erda M. Nieves, represented herself and filed a response claiming that "Mr. Gonzalez willingly and knowingly agreed to pay" his entire retirement to her. The trial court heard the matter on October 25, 2005, without testimony. In an order entered on July 18, 2008,[2] the court

> found no basis to disturb the provisions of paragraph 10, Retirement Pay, regarding the payment of 100% of Neftali Gonzalez's Military Retirement to Erda M. Gonzalez (now "Nizves" [sic]). Specifically, the Court would not disturb the award of 100% of the Husband's Military retirement to the Wife. The Husband's Counsel's argument that this portion of the Final Decree is unenforceable pursuant to 10 U.S.C. Section 1408 is respectfully overruled.

The court did find that the wife's remarriage terminated Mr. Gonzalez's duty to pay alimony.

Mr. Gonzalez appealed the trial court's decision. Upon the motion of Mr. Gonzalez, on November 5, 2008, this court stayed the appeal pending settlement discussions. The settlement was never completed, and on June 22, 2010, this court lifted the stay and allowed the appeal to proceed.

Since the petition was filed under the same docket number as the divorce, we consider it to be the equivalent of a motion for post-judgment relief under Tenn. R. Civ. P. 60. Subsections 60.02(3) & (5)[3] would apply if the allegation as to the federal 50% limit are accurate. "A motion for relief under Rule 60.02 addresses itself to the sound discretion of the trial judge, and the scope of review is whether the trial judge abused that discretion." *Day v. Day*, 931 S.W.2d 936, 939 (Tenn. Ct. App. 1996). We will overturn a trial judge's

---

[1](...continued)
retirement pay.

[2]The record contains no explanation for the delay of almost three years between the hearing and the entry of the order.

[3]Tenn. R. Civ. P. 60.02(3) allows relief when the judgment is void. Tenn. R. Civ. P. 60.02(5) permits relief for "any other reason justifying relief from the operation of the judgment."

discretionary decision "when the trial court has misconstrued or misapplied the controlling legal principles." *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

While Mr. Gonzalez lists three issues in his appellate brief, this matter really boils down to one question: whether federal law prohibits a Tennessee court from awarding 100% of Mr. Gonzalez's military retirement to his former wife in the course of divorce proceedings. The trial court essentially ruled that federal law did not prohibit such an award but did not favor the litigants or this court with its reasoning.

Pursuant to federal law, a state court may treat disposable retirement pay of a military retiree as solely the retiree's property or as property of the retiree and his spouse "in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c)(1). In Tennessee, marital property includes the value of vested and unvested pension rights that accrued during the marriage. Tenn. Code Ann. § 36-4-121(b)(1)(B). "[M]ilitary retired pay is marital property subject to equitable distribution." *Johnson v. Johnson*, 37 S.W.3d 892, 895 (Tenn. 2001). There is no dispute in this case that the pension rights accrued during the parties' marriage.

Mr. Gonzalez argues that the state court's right to divide the military pension between the retiree and his or her spouse is limited by 10 U.S.C. § 1408(e)(1): "The total amount of the disposable retired pay of a member payable under all court orders pursuant to subsection (c) may not exceed 50 percent of such disposable retired pay."

This appears to be an issue of first impression in Tennessee.[4] When interpreting a statute, the primary purpose is to ascertain and give effect to the intention or purpose of the legislature. *Westinghouse Elec. Corp. v. King*, 678 S.W.2d 19, 23 (Tenn. 1984). This "legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in the context of the entire statute, without any forced or subtle construction to limit or extend the import of the language." *Mangrum v. Owens*, 917 S.W.2d 244, 246 (Tenn. Ct. App. 1995) (quoting *Worrall v. Kroger Co.*, 545 S.W.2d 736, 738 (Tenn. 1977)). Also, "[i]n construing a statute to ascertain the legislative intent, it is permissible to take note of the conditions existing at the time of such an enactment." *Davis v. Beeler*, 207 S.W.2d 343, 344 (Tenn. 1947).

---

[4]In *Thomas v. Thomas*, 1987 WL 9164 (Tenn. Ct. App. Apr. 10, 1987), this court observed that the federal law "allows the state courts to award a spouse up to 50% of the disposable military retirement pay." *Id*. at *2. This statement is, however, dicta, since the award fell "within this limitation." *Id*. The issue of whether the statute operated as a limit on court awards was not before the court. *See also In re Marriage of Bocanegra*, 792 P.2d 1263, 1267 (Wash. Ct. App. 1990).

Congress passed the Uniformed Services Former Spouses Protection Act ("USFSPA") in response to *McCarty v. McCarty*, 453 U.S. 210, 236 (1981), in which the United States Supreme Court held that the statutes governing military retirement pay impliedly pre-empted state divorce property division laws. The Senate Report states:

> The primary purpose of the bill is to remove the effect of the United States Supreme Court decision of *McCarty v. McCarty*, 453 U.S. 210 (1981). The bill would accomplish this objective by permitting Federal, State, and certain other courts, consistent with the appropriate laws, to once again consider military retired pay when fixing the property rights between the parties to a divorce, dissolution, annulment or legal separation.

 S. REP. NO. 97-502, at 1, *reprinted in* 1982 U.S.C.C.A.N. 1596.

Congress intended to "undo" the implied preemption found in *McCarty* by the express terms of the USFSPA. Furthermore, the act established a direct payment system not previously available to an ex-spouse. Under this system, akin to garnishment, when presented with a court order, the secretary will pay the ex-spouse the amount of the order up to 50% of the disposable earnings. 10 U.S.C. § 1408(d) & (e)(1).

Yet, the USFSPA is not a shining example of clarity. State courts are split on the meaning of 10 U.S.C. § 1408(e)(1). *See* Ann K. Wooster, Annotation, *Construction and Application of Federal Uniformed Services Former Spouse Protection Act in State Court Divorce Proceedings*, 59 A.L.R. 6TH 433 (2010). Some hold that the state court can award more than 50% of the military retirement pay to the spouse, but that for amounts over 50% the court must order the military retiree to pay the spouse directly.[5] *See Ex parte Smallwood*, 811 So. 2d 537, 539-41 (Ala. 2001); *Deliduka v. Deliduka*, 347 N.W.2d 52, 55 (Minn. Ct. App. 1984). Other courts find that 10 U.S.C. § 1408(e)(1) limits the amount of the retirement pay that can be brought into the marital estate to 50%, thereby capping the amount of a possible award to the spouse at that level. *See In re Marriage of Bowman*, 972 S.W.2d 635, 639 (Mo. Ct. App. 1998); s*ee also Beesley v. Beesley*, 758 P.2d 695, 699 (Idaho 1988).

The language of 10 U.S.C. § 1408(c)(1) gives a state court permission to treat disposable retirement pay of a military retiree as solely the retiree's property or as property of the retiree and his spouse "in accordance with the law of the jurisdiction of such court."

---

[5]In 10 U.S.C. § 1408(d)(1), Congress created the direct pay mechanism through which the federal government would make direct payments to a former spouse who presents a state court order granting him or her a portion of the military retirement payments. It contains no express limitations on the percentage of the state court's award.

Although § 1408(c) contains limitations related to its effective date, the transferability of the right by the spouse, and the ability of a state court to order an individual to retire at a particular time, it does not contain any express limitation on the state court's ability to award any portion of the retirement pay to the spouse that it deems appropriate.

The savings clause of the act is also instructive:

> Nothing in this section shall be construed to relieve a member of liability for the payment of alimony, child support, or other payments required by a court order on the grounds that payments made out of disposable retired pay under this section have been made in the maximum amount permitted under paragraph (1) or subparagraph (B) of paragraph (4). Any such unsatisfied obligation of a member may be enforced by any means available under law other than the means provided under this section in any case in which the maximum amount permitted under paragraph (1) has been paid . . . .

10 U.S.C. § 1408(e)(6).

Reading § 1408(e)(6) in conjunction with § 1408(c)(1), which grants the state authority to divide the military pension without stating any percentage limitations, a number of courts have come to the conclusion that the 50% limit in § 1408(e)(1) only addresses the amount of the pension that can be paid directly to the former spouse by the government.[6] *See In re Madsen*, No. 00-4811-WH, 2002 WL 34552506, at *7 (Bankr. S.D. Iowa Oct. 15, 2002)*; MacMeeken v. MacMeeken*, 117 B.R. 642, 645 (D. Kan. 1990); *Ex parte Smallwood*, 811 So.2d at 540; *Deliduka*, 347 N.W.2d at 55; *Maxwell v. Maxwell*, 796 P.2d 403, 406 n.6 (Utah Ct. App. 1990)*; In re Marriage of Bocanegra*, 792 P.2d at 1268. In reaching this conclusion, some courts have relied, in part, on the following language from *Mansell v. Mansell*, 490 U.S. 581, 590 (1989):

> In our view, the saving clause serves the limited purpose of defeating any inference that the federal direct payments mechanism displaced the authority of state courts to divide and garnish property not covered by the mechanism.

---

[6]This interpretation is consistent with the view that the disbursement mechanism is similar to garnishment. "[T]he Act essentially does no more than most garnishment laws in establishing a collection ceiling." *Casas v. Thompson*, 720 P.2d 921, 932 n.12 (Cal. 1986) (quoting Hauserman & Fethke, *Military Pensions as Divisible Assets: The Uniformed Services Former Spouses' Protection Act*, 11 J. LEGIS. 27, 37 (1984)). At least one court has expressly said that the act's provisions were "intended only as a limit on the amount of disposable retired pay which can be garnished and paid out by the service secretaries pursuant to court orders." *Grier v. Grier*, 731 S.W.2d 931, 933 (Tex. 1987).

*See Ex parte Smallwood*, 811 So. 2d at 541; *Forney v. Minard*, 849 P.2d 724, 729 (Wyo. 1993).

Two courts place special emphasis on the 1990 amendments to § 1408(e)(1). *See Cline v. Cline*, 90 P.3d 147, 152 n.11 (Alaska. 2004); *Coon v. Coon*, 614 S.E.2d 616, 618 (S.C. 2005) (citing with approval *Coon v. Coon*, 588 S.E.2d 624, 628 (S.C. Ct. App. 2003)). Prior to the amendment, § 1408(e)(1) read: "The total amount of the disposable retired or retainer pay of a member payable under subsection (d) may not exceed 50 percent of such disposable retired or retainer pay." 10 U.S.C. § 1408(e)(1990). After the amendment, § 1408(e)(1) reads: "The total amount of the disposable retired pay of a member payable under all court orders pursuant to subsection (c) may not exceed 50 percent of such disposable retired pay." 10 U.S.C. § 1408(e)(1). House Report No. 101-665 states the reason for the change: "The law would be clarified to ensure that regardless of the number of former spouses, the aggregate amount of retired pay that would be payable to them would not exceed 50 percent of the service member's disposable retired pay." 1990 U.S.C.C.A.N. 2931, 3006.

*Cline* and *Coon* view the 1990 amendment as changing the manner in which payment was restricted. The amendment replaced the reference to subsection (d), the distribution mechanism, with a reference to subsection (c), the section giving state courts jurisdiction to treat the retirement pay as property of the retiree and his spouse if state law so allowed. Thus, according to *Coon*, "[A]fter the 1990 amendment, the fifty-percent restriction on payment of disposable military retirement pay was reworded to apply to divisions of retirement benefits made under any court order pertaining to former spouses." *Coon*, 588 S.E.2d at 628.

Legal commentators seem divided as well. *Compare* Particia K. Hinshaw, *Navigating The Uniformed Services Former Spouses' Protection Act,* 19 S.C. LAW. 32, 36 (2008) ("Any amount awarded by a state court in excess of the 50 percent cap must be obtained directly from the retiree, not the [Defense Finance and Accounting Office]."), *and* Larry D. White, *The Uniformed Services Former Spouses' Protection Act: How Military Members are at the Mercy of Unrestrained State Courts*, 9 ROGER WILLIAMS U. L. REV., 289, 294 (2003) ("The USFSPA only addresses this issue from the standpoint of defining the maximum amount the armed services are required to pay directly to the former spouse under valid court orders; it does not interfere with state laws to limit the amount that states may award."(footnotes omitted)), *with* Brian R. Decker, *"The Toughest Job": Adkins v. Rumsfeld, Gender, Incentives, and The Uniformed Services Former Spouses' Protection Act*, 17 COLUM. J. GENDER & L. 245, 247 n.23 (2008) ("The Act also places a fifty percent maximum on the portion of the retirement pay redistributed to former spouses."), *and State-by-State Analysis of Divisibility of Military Retired Pay*, ARMY LAW., Aug. 2002, at 42, 49 (noting that the decision of *Forney v. Minard* "is inconsistent with the 1990 amendment to USFSPA, 10

U.S.C. § 1408(e)(1), which deems all orders dividing military retired pay as property satisfied once a threshold of fifty percent of the 'disposable retired pay' is reached").

It appears that the United States military does not view § 1408(e)(1) as a limit. The Defense Finance and Accounting Service observes that "[t]he amount of a former spouse's award is entirely a matter of state law." DIVIDING MILITARY RETIRED PAY 6 (2006), http://www.dfas.mil/militarypay/garnishment/Speech5.pdf; *see also* UNIFORMED SERVICES FORMER SPOUSE'S PROTECTION ACT 2-3 (2010), http://www.redstone.army.mil/legal/data/1-usfspa.pdf ("If a state court awarded you 60% of your former spouse's retired pay and you qualify under this statute to get direct pay, then you would collect 50% through the Finance Center and your former spouse would be responsible for providing the other 10% to you."); DOMESTIC RELATIONS FROM A MILITARY PERSPECTIVE: FREQUENTLY ASKED QUESTIONS 9 https:www.cnic.navy.mil/navycni/groups/public/documents/document/cnicp_a134503.pdf ("The 50% maximum of DRP [disposable retired pay] is a limit on how much retired pay can be paid directly, but it is not a limit on how much a court can award.").

*Cline* and *Coon* do not discuss the impact of § 1408(e)(6), the savings clause. While the amended USFSPA presents a frustrating tangle of mixed messages and conflicting intentions, as reflected in the case law and articles, § 1408(e)(6) offers the only clear expression of Congress's intent as to state court orders that have not been totally satisfied by the federal government's payments made directly to the former spouse.[7] It states that a service member cannot escape liability for state court ordered "alimony, child support or *other payments*" just because the federal disbursements to the former spouse have reached the statutory limit."[8] 10 U.S.C. § 1408(e)(6) (Emphasis added).

Based on the language of § 1408(e)(6), we hold that the USFSPA does not prohibit a Tennessee state court from awarding more than 50% of the husband's military retirement

---

[7] *See* Brett R. Turner, 2 EQUITABLE DISTRIBUTION OF PROPERTY, 3d § 6:4 (2010) ("State courts are free to exceed these percentage limits by ordering payment be made directly from one spouse to the other. This fact is made clear by § 1408(e)(6), which expressly states that no limitation in § 1408(e) shall prevent enforcement of any obligation by means other than federal direct payment." (footnotes omitted)).

[8]*In re the Marriage of Bowman*, 972 S.W.2d 635 (Mo. Ct. App. 1998), rejects this view of § 1408(e)(6), stating that the provision "only eliminates a defense for a retired armed services member from asserting that he or she cannot meet maintenance, child support, or property awards ordered by a court by showing that his or her only source of income derives from retired pay." *Id*. at 639. We do not believe that the broad wording of § 1408(e)(6) supports such a narrow interpretation. Neither does the legislative history. Senate Report No. 97-502 states: "[t]he bill makes it clear that the mere attainment of that [50%] ceiling in no way absolves the former member of still outstanding legal obligations for alimony, child support or other payments. Any such unsatisfied obligation may be enforced by any means available under law . . . ." 1982 U.S.C.C.A.N. 1596, 1606.

to his former spouse when making an equitable distribution of marital property in the course of a divorce proceeding. Thus, the trial court did not misconstrue or misapply the law and Rule 60.02 relief is not appropriate.

Even if § 1408(e)(1) operated as a limitation, we would uphold the trial court's order. In the marital dissolution agreement, Mr. Gonzalez willingly agreed to give his former wife 100% of his military retirement. The marital dissolution agreement is a contract. *Johnson*, 37 S.W.3d at 896. There is no dispute that the agreement calls for 100% of the retirement to go to the ex-spouse. We know of no legal authority prohibiting Mr. Gonzalez from agreeing to provide his ex-wife with 100% of his retirement pay as part of a comprehensive property settlement. Such agreements have been upheld by courts on both sides of the USFSPA issue we address today. *See Coon*, 614 S.E.2d at 618*; Forney*, 849 P.2d at 729, 731. "The broad power granted by Rule 60.02(5) is not to be used to relieve a party from free, calculated, and deliberate choices he or she has made." *Day*, 931 S.W.2d at 939. Furthermore, post-judgment modification of a marital dissolution agreement is impermissible. *Johnson*, 37 S.W.3d at 897.

We note that the marital dissolution agreement states that "payments of the retirement shall be paid by income assignment." Since only 50% of the retirement pay may be paid directly to the spouse by the federal government, Mr. Gonzalez is ordered to pay the remaining portion of his military retirement to Ms. Nieves as it is received.[9]

Costs of appeal are assessed against the appellant, Mr. Gonzalez, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[9]There is some indication in the record that Ms. Nieves cannot be located. If such is the case, Mr. Gonzales should seek guidance from the trial court.